HIRAM N. LEE AND GEORGE VAN WAGNER v. JAMES
W. MAXWELL ET AL.

*Attachment—Seizure of goods—Indemnity bond—Liability of
obligors.*

1. A sheriff is not justified in attaching an entire stock of goods,
   worth, according to the appraisal, 10 times the amount of the
   claim sued for, and, according to a judgment in trover after-
   wards recovered against him, 15 times such amount.

2. Where after the attachment by a sheriff of a stock of goods in
   defiance of the rights of a mortgagee, and the commencement
   of a suit by the mortgagee for the alleged conversion of the
   goods, other creditors, with knowledge of such facts, deliver
   an execution to the sheriff, with an indemnity bond, and the
   sheriff indorses a levy on the attached property subject to the
   attachment, and, after satisfying the judgment afterwards
   recovered in the attachment suit by a sale of a portion of the
   goods, sells the remainder on the second execution, the junior
   creditors do not become original trespassers under the act of
   the attaching creditors, or joint trespassers with them, or
   trespassers by ratification, and the measure of damages in a
   suit on the indemnity bond is the value of the goods sold on
   the junior execution.

Error to Ionia.    (Smith, J.)    Argued December 14, 1893.
Decided January 26, 1894.

*Assumpsit.*    Plaintiffs bring error.    Affirmed.    The facts
are stated in the opinion.

*Ellis, Nichols & Miller* and *F. D. M. Davis* (*Fletcher & Wanty*, of counsel), for appellants.

*William O. Webster*, for defendants.

GRANT, J. This is a suit upon a bond of indemnity executed by the defendants to the plaintiffs. The case was tried before the court without a jury, and the facts found by the court are as follows:

1. Lee was sheriff, and Van Wagner his deputy, at the time of the execution of the bond.

2. Defendants the Maxwells and Prevost were copartners, under the name of S. A. Maxwell & Co., and defendant Sessions was surety upon the bond.

3. April 6, 1888, James W. Tufts & Co. commenced a suit by attachment against one Willis M. Elder, a merchant, whose stock of goods consisted of groceries, crockery, and drugs. The sheriff, by his deputy, levied upon all the goods of this stock by virtue of said writ of attachment. The goods were appraised at $2,206.

4. May 23, 1888, one Charlotte Showman, claiming these goods as mortgagee, brought suit against plaintiffs in this case in trover for the conversion thereof. This suit resulted in a verdict and judgment for her on January 8, 1891, for $3,862.51, including costs.

5. On the 5th day of November, 1888, judgment was rendered in favor of Tufts & Co. against Elder for $219.81. Execution was issued November 12, 1888, and levy was made upon the goods so attached.

6. February 8, 1888, the defendants Maxwell & Co. brought suit in the circuit court for the county of Ionia against Elder, and recovered judgment on May 11, 1888, for $555.56, and costs. October 19, 1888, execution was issued upon this judgment, and placed in the hands of the sheriff October 20. The sheriff levied upon the goods, subject to the attachment lien of Tufts & Co., which goods were then in the hands of the sheriff by virtue of the writ of attachment.

7. December 3, 1888, sale of the goods was commenced at public auction, after due notice, under and by virtue of the execution in favor of Tufts & Co. The sale was continued from day to day until sufficient was realized to

pay the judgment, costs, and expenses. The amount realized and necessary therefor was $757. The balance of said goods was then sold under and by virtue of the execution in favor of the defendants Maxwell & Co. The amount received for such balance was $295. The goods were first offered in parcels, but, no bids being made, they were sold in bulk to the defendants Maxwell & Co.

8. Before the levy of the execution in favor of Maxwell & Co., they gave to the sheriff and his deputy an indemnity bond in the sum of $1,200. The condition of this bond was—

"That if the above-bounden S. A. Maxwell & Co. shall well and truly save, keep, and bear harmless, and indemnify the said Hiram N. Lee and his said deputy, and all and every person and persons aiding and assisting him in the premises, of and from all harm, let, trouble, damages, costs, suits, actions, judgments, and executions that shall or may at any time arise, come, or be brought against him, them, or any of them, as well for the levying and making sale under and by virtue of such execution of all or any goods and chattels which he or they shall or may judge to belong to the said Willis M. Elder or Charlotte Showman, as well as in entering any shop, store, building, or other premises, for the taking of any such goods and chattels, then this obligation to be void; else to remain in full force and virtue."

9. At the time levy was made under the execution of Maxwell & Co., they knew that suit had been commenced by Charlotte Showman, as mortgagee, against the said sheriff and his deputy, to recover for the value of the goods so levied upon, and they were informed of the claim of said Charlotte Showman under her mortgage.

10. Charlotte Showman made demand for the remainder of the goods after the Tufts execution had been satisfied, but the officer refused to deliver them, stating that he held them by virtue of the execution in favor of Maxwell & Co.

11. The execution of Maxwell & Co. was levied on the goods after the attachment by Tufts & Co. was levied, and before the execution was levied by Tufts & Co.

CONCLUSION OF LAW:

That plaintiffs were entitled to judgment for $295, and interest thereon from December 15, 1888, at 6 per cent. per annum.

Plaintiffs' positions are summarized as follows:

1. Defendants were original trespassers.

2. They were joint trespassers with the officers and Tufts & Co.

3. They became trespassers by ratification and adoption. They are therefore liable for the full amount of the bond.

4. If they are not liable for the full amount of the bond, they are at least liable in the proportion that the amount of goods purchased by them bore to the whole amount realized from the sale, as that amount is to the whole amount paid by the plaintiffs to Mrs. Showman.

Plaintiffs, under the direction of Tufts & Co., levied upon an entire stock of merchandise, which, according to the inventory and appraisal made under the direction of the plaintiffs, was worth 10 times the amount of the claim sued upon, and which, according to the verdict of the jury in the Showman case, was worth 15 times that amount. If the goods had not been mortgaged, clearly plaintiffs would not have been justified in seizing them all. If Tufts & Co. and plaintiffs had recognized the validity of the mortgage, the levy on the entire stock would have been proper. *Quaere*, was it justifiable when the levy was made in hostility to the mortgage, the validity of which was contested? In that case a levy upon sufficient to satisfy the claim would afford a creditor ample protection.

Upon the levy of the attachment, Mrs. Showman notified plaintiffs of her mortgage, demanded possession of the goods, which plaintiffs refused, and thereupon brought suit in trover for their value. It does not appear whether plaintiffs demanded a bond of indemnity from Tufts & Co. Common prudence would have caused them to demand a bond in order to protect themselves. If they did, the injustice of resorting to the bond given by defendants on their levy more than six months afterwards, to recover for the acts of plaintiffs under the direction of Tufts & Co., is apparent. If they chose to proceed without a bond from Tufts & Co., the injustice is equally apparent. In either case defendants should not be held liable beyond the

value of the property sold on their execution, unless some inexorable rule of law stands in the way.

Plaintiffs, presumably under the direction of Tufts & Co., retained the goods, under their attachment levy, until the costs amounted to more than twice their claim. Undoubtedly this stock of goods comprised the entire amount of Elder's property subject to execution, for the presumption is reasonable that the defendants, with knowledge of the mortgage and of the prior levy, would not have directed a levy upon this property could they have found other. This is not a case where creditors combine in a joint cause against a debtor or his mortgagee. There was no concert of action shown between Tufts & Co. and Maxwell & Co. Their claims and interests were entirely distinct, and continued distinct throughout. When plaintiffs received the execution upon defendants' judgment against Elder, the property had been in their possession for six months under the attachment. There was no change of possession. All plaintiffs did was to indorse their levy upon the execution, and their original possession continued. The conversion by plaintiffs had become complete, and Mrs. Showman had brought her action against them for such conversion. Plaintiffs advertised and sold the goods under the Tufts & Co. execution, and then advertised and sold the remainder under defendants' execution. We do not think, under these circumstances, that there is any reasonable ground for holding 'that Maxwell & Co. became either original trespassers under the act of Tufts & Co., or joint trespassers with them, or trespassers by ratification. The fundamental error in the plaintiffs' argument lies in the assumption that the attachment of Tufts & Co. was for the advantage of Maxwell & Co., whose levy was subsequent and subject to the first. The contrary is the fact, for it is manifest that Maxwell & Co. would have been in a better position if Tufts & Co. had not attached.

In *Smith v. Johnson,* 95 Ala. 482, Johnson sued out a writ of attachment subsequently to other writs, and gave a bond of indemnity. The property was claimed by one Allen. The levy was indorsed on Johnson's writ of attachment, which was all that was done in the present case. Subsequently, Johnson discharged the property from the levy, Allen agreeing to relinquish all claim against Johnson because of the levy of his writ. Smith, the sheriff, sued Johnson under his indemnity bond. It was held that he could recover only nominal damages, and that the bond did not cover the acts of the sheriff under previous attachments.

In *Posthoff v. Schreiber,* 47 Hun, 593, it was held that, as each of the creditors proceeded separately, for his own benefit, exclusive of the others, they were not joint wrong-doers, but each levy and seizure was a separate and distinct act from all the others. The court, in that case, distinguish it from *Posthoff v. Bauendahl,* 43 Hun, 570, and hold that there is no conflict between the two cases.

In *Davidson v. Dallas,* 8 Cal. 227, 254, one Gilson attached a steam tug. Dallas, on the same day, sued out a subsequent attachment. Separate bonds of indemnity were given to the sheriff. Davidson, claiming the property, sued the sheriff for the seizure of the vessel, recovering a judgment for $85,000. The sheriff assigned the bond of indemnity, given by Dallas, to Davidson, who brought suit upon it. The court held:

1. If the attachments had been sustained, and the whole proceeds of the property absorbed by the debt of Gilson, then he would have been solely responsible to the sheriff for the entire liability incurred by him to Davidson.

2. If Gilson's levy had been defeated, and that of Dallas sustained, then Dallas would have been solely responsible for the entire amount.

3. If both attachments had been sustained, and the property sold for more than sufficient to pay Gilson, then.

Gilson and Dallas would have been responsible in proportion to the amounts paid to each by the sheriff.

"4. If both the attachments had been defeated by Meiggs [the debtor], or if the suits of Gorham [the sheriff] against the indemnitors had been commenced before the determination of the attachment suits against Meiggs, then the separate responsibility of Gilson and Dallas would have been in proportion to the amounts of their respective attachments, except in case the whole amount for which both attachments were levied had exceeded the value of the property as settled in the suit against the sheriff, in which case the prior attaching creditor would have been responsible to the amount of his attachment, and the subsequent attaching creditor for the remainder."

It will be observed that that case differs from the present one, in that the property levied upon was a single article, while, in the present case, the property consisted of several articles, and the plaintiffs, in the absence of a mortgage, would not have been justified in levying upon more than sufficient to satisfy the creditors' claim. A rehearing was granted in that case, resulting in the affirmance of the first opinion.[1] The case again came before the court in 15 Cal. 75, when there had been an entire change in the court. The soundness of the previous opinion was doubted, and dissatisfaction with it expressed by the learned judges, in order to obviate the idea of an implied approval. Notwithstanding the doubt thus cast upon the former opinion, we think it has much force, reason, and justice to commend it.

Sutherland, in his work on Damages (§ 763), after discussing the liability of creditors as joint trespassers, says:

"But such liability does not extend to cases in which creditors act independently of each other, and in which valid liens have been obtained, equal in amount to the value of the property, and judgments pursuant thereto have been recovered."

The importance of the question may justify us in a state-

---

[1] 8 Cal. 256.

ment, as concise as possible, of some of the authorities cited and relied upon by the plaintiffs.

In *Lovejoy v. Murray*, 3 Wall. 1, no question of the priority of creditors was involved. Lovejoy brought suit against one Pratt, attaching personal property, assumed to be the property of Pratt, but claimed by Murray. After the levy of the attachment, and ascertaining that Murray claimed the property, the sheriff declined to proceed further without a bond of indemnity. The court did not decide whether the giving of the bond made the party liable *ab initio*, but held that it was equivalent to a personal interference in the course of the proceeding, and that the plaintiff in the attachment suit thus assumed the direction and control of the sheriff's future action, and thereby became responsible for the continuance of the wrongful possession, and for the sale and conversion of the goods.

In *Cox v. Hall*, 18 Vt. 191, it was held that the owner of property may maintain trespass against an officer and a second attaching creditor jointly, and that the previous attachment did not so far divest plaintiff of his possession that he could not maintain trespass, if such previous attachment was unlawful.

In *Root v. Chandler*, 10 Wend. 110, the creditors of one Rice, of whom Chandler was one, had a consultation a few hours after the first levy was made, and directed the constable to detain the property. In such case all became original and joint trespassers.

In *Walker v. Wonderlick*, 33 Neb. 504, Wonderlick, a constable, seized the plaintiff's property under two writs of attachment, issued simultaneously, against one S. T. Walker. The suit was brought against the officer and the attaching creditors jointly, and the question arose upon demurrer to plaintiff's petition, and it was held that all were joint wrong-doers.

In *Roberts v. Safe-Deposit Co.*, 123 N. Y. 57, the action was for the alleged negligence of defendant, a bailee for hire, in surrendering plaintiff's property to a third party on a search warrant. Defendant sought to defend upon the ground that, after the property had been so seized, it was levied upon by attachments against the plaintiff. All the attachment suits against her had been discontinued, except one, and, as to that, she offered to show that it was fraudulent. It was held that such a defense could not avail.

The principal case relied on is *Watmough v. Francis*, 7 Penn. St. 206, 219. In that case the goods were levied upon and sold by virtue of two writs of *fi. fa.*, of which the defendant Francis' was one, but was subsequent to another. Francis had given a bond of indemnity. The property sold realized sufficient only to pay the prior execution, so that Francis received no benefit from his levy and sale. He was held liable upon his bond. Much stress is laid, in the opinion, upon the fact that the goods were sacrificed at the sale, and that it was Francis' own fault that he received nothing in payment of his debt, for it was his duty, as well as interest, to see that the goods brought a fair price. Both writs were in the hands of the sheriff, and he was about to proceed to sell on them, when he was notified that the goods did not belong to the defendant in the execution. He refused to proceed without a bond. Francis gave one, and the sheriff proceeded to sell at the instance of Francis. His liability was held to turn upon the intention of the parties to the bond. The court said:

" What, then, was the meaning of the parties to this contract? To my mind it is clear, when we consider all the attending circumstances, that one had the right to ask, and the other was bound to concede, that by the word ' execute ' the writ was meant levying and selling the goods, paying the proceeds according to law, viz., into court or

to the first execution creditor, and applying the surplus, if any, to the payment of the plaintiff's debt. These duties the sheriff performed to the letter. In nothing has he failed. He levied on the plaintiff's writ, sold on his writ, and paid the money to the persons legally entitled, as he was commanded. It is not the less a levy and sale on the plaintiff's writ that he had another writ in his hands, for, as we have seen, he levies and sells on all the writs."

We do not wish to be understood as indorsing the rule of that case, but it is unnecessary to dissent from it, in this case, on account of the difference in the facts, which have, perhaps, already been sufficiently pointed out. Plaintiffs, in the present case, did not sell under one writ, for the benefit of the other, but sold under each separately. The entire conduct of plaintiffs, Mrs. Showman, Tufts & Co., and of Maxwell & Co. showed that Maxwell & Co.'s claim was considered as entirely distinct and separate from that of Tufts & Co. No such intention as existed in that case can be gathered from the facts of this.

We think it clear that these authorities are inapplicable to the present case, and do not control it. The conversion by plaintiffs became complete upon Mrs. Showman's demand upon them, and she had brought her suit for such conversion nearly five months before the levy of Maxwell & Co. That suit was determined by the facts as they then existed, unaffected by the subsequent levy. It follows that Maxwell & Co. were liable only for the value of the goods sold under their execution. The only evidence of value was the amount realized upon the sale.

Judgment must therefore be affirmed.

The other Justices concurred.