Koch vs. Peters and others.

Koch, Respondent, vs. Peters and others, Appellants.

*October 26 — November 16, 1897.*

*Attachment: Joint liability of attaching creditors: Chattel mortgage: Fraudulent conveyances: Plea in abatement of another action pending: Costs.*

1. To render fraudulent as to creditors a chattel mortgage given to secure a *bona fide* debt, it is not sufficient that the creditor may know or believe that the debtor is intending to hinder, delay, or defraud creditors, if he does not participate in that intention.

2. Though, in an action by a mortgagee of chattels against the sheriff and the attaching creditors of the mortgagor for the conversion of the mortgaged goods, the defendants allege that the plaintiff's mortgage is fraudulent as to them, they cannot set up by plea in abatement the pendency of another action brought in equity by the attaching creditors against the mortgagee and certain others to set aside the mortgage and other transfers of property by the mortgagor as being fraudulent, because such action is not between the same parties, nor for the same purpose, nor could the same relief be obtained therein by the mortgagee.

3. Where, after mortgaged goods have been wrongfully attached by creditors of the mortgagor, other creditors place their writs in the hands of the sheriff and he indorses thereon returns of a levy upon the same goods, subject to the first levy, and such subsequent attaching creditors do nothing more, they perhaps may not be liable to the mortgagor jointly with the sheriff and the first attaching creditors; but if they afterward join together to direct and assist the sheriff in making a sale of the property, and combine to commence an action in equity to set aside the mortgage as fraudulent, and to enjoin a sale of the property by the mortgagee, they and the indemnitors of the sheriff become jointly liable with such sheriff and first attaching creditors.

4. In an action by the mortgagee against the sheriff and the attaching creditors for the conversion of the goods, it is error to render judgment against defendants who simply signed undertakings upon the issuing of the attachments to pay the defendant in attachment all damages and costs which he might sustain, not exceeding $250, in case he recovered judgment, and who did not participate in the subsequent acts of the sheriff.

5. A successful plaintiff is entitled to tax costs for a draft of each paper and for three copies thereof, viz. an engrossed copy, one to

keep, and one to serve, and also for two copies of the judgment, viz. an engrossed copy and one to keep.

6. Where there are several defendants, the plaintiff is not entitled to tax for copies to serve upon each of those defendants, it being the duty of the sheriff to make such copies.

7. Nor, in an action for the conversion of goods, is he entitled to charge for copies of a long list of the goods attached to the complaint. That should describe the goods in general terms, and a list could afterwards be furnished if demanded.

8. Nor can he tax costs for drawing papers to resist a motion for a change of venue, wherein he was successful and recovered motion costs.

9. Where the plaintiff's witnesses attended court on the day set for the trial, but, it not coming on, went home and returned on the adjourned day, the plaintiff was entitled to tax double fees for the travel of such witnesses.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed in part; reversed in part.*

This is an action to recover the value of a stock of merchandise alleged to have been converted by the defendants. The plaintiff claims title thereto by virtue of a chattel mortgage dated on the 31st of October, 1894, and filed in the office of the town clerk of the proper town on the 15th of November, 1894, given by George G. Koch, who was admittedly the owner of the stock of goods prior to the giving of the mortgage. The mortgage secured payment of a note of $8,054.60, signed by George G. Koch and Amelia Koch, his wife, dated October 31, 1894, and payable on or before two years from date. George G. Koch remained in possession of the stock at Knowles, Dodge county, after the execution of the mortgage, and on the 26th of November following the defendants *L. A. Shakman & Co., Benjamin Scheftels, F. E. Abeles,* and *A. Mahler,* and the *Pritzlaff Hardware Company,* who were creditors of George G. Koch, sued out writs of attachment against him, and placed them in the hands of *Peter Peters,* the sheriff of the county, who levied the same

Koch vs. Peters and others.

that day upon the stock of goods in question.    Upon several succeeding days others of the defendants in this action, who were also creditors of G. G. Koch, sued out writs of attachment against him, and placed them in the hands of the sheriff for service, and the sheriff indorsed thereon that he had levied upon the stock of goods in question subject to the preceding attachments.    The return of the sheriff shows that the attachment of *Shakman & Co.* was given the precedence in the levy, and that all other attachments were subject to that levy.    In addition to the sheriff and the attaching creditors, the plaintiff joined as defendants certain other persons, who were either sureties in the attachment undertakings, or the signers of indemnity bonds given to the sheriff to protect him in his acts.    The defendants justified the acts of the sheriff under and by virtue of said writs of attachment, and alleged that the plaintiff's chattel mortgage was given with intent to defraud creditors.

The jury rendered a special verdict to the effect that: (1) George G. Koch made the chattel mortgage in question with intent to hinder, delay, and defraud his creditors. (2) The plaintiff knew of facts and circumstances such as would put a reasonably prudent man upon inquiry, and the inquiry would have led to his ascertaining the truth.   (3) The debt for which the chattel mortgage and note were given was a *bona fide* debt for money loaned.  (4) The plaintiff had no knowledge of any fraudulent intent or purpose on the part of G. G. Koch in giving the chattel mortgage. (5) The plaintiff did not leave G. G. Koch in possession of the mortgaged property with the understanding that he should go on selling the same, and applying the proceeds, or a part thereof, to his own use, as if no mortgage had been given.   (6) The goods coming into the store after the mortgage was made were not so intermingled with the mortgaged goods that the sheriff could not select the one from the other.   (7) The value of the mortgaged property taken

and sold by the sheriff under the writs of attachment was
$11,000.

Upon this verdict judgment was entered for the plaintiff
for the amount of his chattel mortgage, interest, and costs,
and from that judgment the defendants appeal.

For the appellants there was a brief by *Malone & Bach-
huber,* attorneys, and *W. J. Turner,* of counsel, and oral ar-
gument by *W. J. Turner* and *J. E. Malone.* They argued,
*inter alia,* that the plea in abatement of another action
pending ought to have prevailed. The validity of the plaint-
iff's chattel mortgage was at issue in both suits, and a decis-
ion in the equity suit that it was void would have prevented
a recovery in this action. *Mullen v. Mullock,* 22 Kan. 598;
*State ex rel. G. B. & M. R. Co. v. Jennings,* 56 Wis. 113;
*Faber v. Matz,* 86 id. 370; 12 Am. & Eng. Ency. of Law, 292;
*Monroe v. Reid,* 46 Neb. 316. To make the defendants tres-
passers *ab initio* the taking must have been for some illegal
purpose. *Grafton v. Carmichael,* 48 Wis. 660; *Barrett v.
White,* 14 Am. Dec. 365. It was sufficient, in order to im-
peach the chattel mortgage, to show that the plaintiff had
knowledge of such facts and circumstances as would put a
prudent man upon inquiry, and, if pursued with proper dili-
gence, lead to a knowledge of the fraudulent intent of the
mortgagor. *Kaufer v. Walsh,* 88 Wis. 63; *Rindskopf v.
Meyers,* 87 id. 80; *Hooser v. Hunt,* 65 id. 71.

For *J. H. Rice & Friedman Co.* and others there was a
brief by *Colman & Sutherland,* attorneys, and *D. D. Suther-
land,* of counsel, and oral argument by *D. D. Sutherland.*
They contended that the defendants whom they represented
had given no instructions to the sheriff in reference to the
attachments or his conduct under them, and had received no
surplus, and a nonsuit ought to have been granted as to
them. The first attaching creditors were liable for the whole
value of the goods. *Stix v. Keith,* 85 Ala. 465. The several
attachments having been levied at different times, there was

Koch vs. Peters and others.

no joint trespass. *Sparkman v. Swift*, 81 Ala. 231; *Sanger v. Henderson*, 1 Tex. Civ. App. 412; *Lee v. Maxwell*, 98 Mich. 496; *Boynton v. Morrill*, 111 Mass. 4. Neither the officer nor the subsequent attaching creditors were liable for the levies under their attachments. Waples, Attachment, § 308; *Luce v. Hoisington*, 54 Vt. 428; *Page v. Carpenter*, 10 N. H. 77; *Ginsberg v. Pohl*, 35 Md. 505; *Weston v. Dorr*, 25 Me. 176; *Mississippi Mills v. J. Meyer & Co.* 83 Tex. 433; *Conrad v. Fisher*, 37 Mo. App. 352. Or if liable at all, it was for nominal damages only. *Groat v. Gillespie*, 25 Wend. 383; *Patterson v. Spaulding*, 5 La. Ann. 171; *Comm. v. Meyer*, 170 Pa. St. 380.

*Jackson B. Kemper*, of counsel, for *F. Mayer Boot & Shoe Co.* and others.

For the respondent there were separate briefs by *Duffy & McCrory*, attorneys, and *Edward S. Bragg*, of counsel, and oral argument by *J. H. McCrory* and *Mr. Bragg*.

WINSLOW, J. This was one of the contests which so often arise between a chattel mortgagee of a stock of goods and attaching creditors of the mortgagor. The attaching creditors claimed that the mortgage was fraudulent as to creditors, and this was the main question litigated in the case. The fact was undisputed that the consideration for the execution of the mortgage was a pre-existing debt, and the jury found that this debt was a *bona fide* debt, and that, while the mortgagor intended to defraud his creditors in giving the mortgage, and the mortgagee knew such facts and circumstances as should have put him on inquiry, which would have led to his ascertaining the mortgagor's purpose, still the mortgagee had no knowledge of the fraudulent intent of the mortgagor, and that there was no agreement or understanding that the mortgagor might apply the proceeds of sales of the mortgaged property to his own use.

Under the rule laid down in *Bleiler v. Moore*, 94 Wis. 385,

these findings establish the validity of the mortgage. It was there held that, to render fraudulent such a transfer of property to pay a *bona fide* debt, the creditor must *participate* in the fraudulent purpose of his debtor. It is not sufficient that the creditor may know or believe that the debtor is intending to hinder, delay, or defraud other creditors if he does not participate in that intention. So the principal contention in this case is easily decided in the plaintiff's favor, and does not require elaboration of argument, nor further citation of authorities.

There are, however, other questions in the case which require attention, and which have caused us no little trouble; not so much by reason of their inherent difficulty or intricacy, as on account of the slovenly and imperfect manner in which the bill of exceptions has been prepared. So great has been the difficulty encountered in ascertaining the facts upon some of the questions raised that it has almost seemed as if we would be justified in striking the bill bodily from the record, and affirming the judgment upon the pleadings and verdict. The amount involved in the action, however, is so considerable that we have finally concluded to consider the questions as best we may upon the imperfect and fragmentary record before us.

In order that these questions may be properly understood, it becomes necessary to state some further facts which appear in the record. The stock of goods was first seized on the 26th day of November by the sheriff, *Peters*, upon a writ of attachment in favor of *Shakman & Co.* Afterwards, upon the same day, the sheriff received three other writs of attachment in favor of the defendants *Scheftels*, *Abeles*, and *Mahler*, and the *Pritzlaff Hardware Company*, and levied them upon the same goods in the order of their receipt, and all subject to the *Shakman* attachment. The remaining attachments were levied subsequently, partly on the following day and partly on November 28th, 30th, and December 1st.

The attaching creditors were represented by different at-
torneys, and we find no evidence showing concert of action
before the levying of the attachments, but it rather appears
to be a case where creditors acted separately, and each strove
to obtain as early a lien as he could after hearing of the first
attachment.   It appears that the sheriff began selling the
goods at private sale on or about December 13th, and con-
tinued his sales, either at privale sale or at auction, until
about the 16th day of January, 1895, when all the goods
had been sold, and the aggregate amount received upon the
sales was $8,203.30.   It was charged in the complaint that
the sheriff unlawfully sold the goods under the direction of
the defendants, and under a "supposed written authority
or permission" procured from the circuit judge in Dodge
county, at chambers, but which supposed order was not
authorized by law; and that the sheriff omitted to comply
even with the terms and conditions of said supposed author-
ity in making said sale.   The answers of the defendants ad-
mitted the sale of the goods, but alleged that the sheriff was
duly authorized, by order of the circuit court for Dodge
county, to sell the same, and complied in all respects with
said order.   Neither party put the alleged order in evidence,
and, so far as the proof showed, the sheriff had no authority
to sell the property as he did.   The summons, complaint,
undertaking, writ of attachment, and return in each of the
attachment actions were put in evidence, but nothing more,
and it does not appear that the attachment actions ever
went to judgment, nor that the sheriff ever applied any of
the money received by him to pay any of the attaching cred-
itors' claims.   The sheriff testified that Messrs. Malone, Law-
rence, and Doney, attorneys at law, partly directed him about
the sale of the goods.   These gentlemen represented all of
the attaching creditors save three, who were represented by
Messrs. Colman & Sutherland, of Fond du Lac.

While the sale was progressing, and in the latter part of

December, the sheriff received seven bonds of indemnity, signed by certain of the defendants. These bonds are not preserved in the bill of exceptions, so far as we can find, but they were offered and received in evidence on the trial, and it is stated by the sheriff that they were " bonds of indemnity given me in the execution of my several acts which I did at Knowles." In the absence of all definite evidence as to the exact conditions of the indemnifying bonds, we are obliged to accept the statement of the sheriff as to their purport, namely, that they were given to indemnify him against the consequences of his acts at Knowles, which acts were the seizing and selling of the stock of goods in question.

On the 31st day of December, 1894, an action in equity was commenced in the circuit court for Dodge county by all the attachment creditors jointly against *William F. Koch*, George Koch, and Amelia, his wife, Edward Schwartz, and John Hoffman, in which it was sought to set aside as fraudulent and void the chattel mortgage in question; also a certain transfer by G. G. Koch of a creamery business and property to Schwartz & Hoffman. The relief demanded in this action, among other things, was that *William F. Koch* be enjoined from foreclosing his said chattel mortgage, or seizing the goods, or commencing any action to recover their value, and a preliminary injunctional order was issued on the same day restraining *William F. Koch* from either of said acts during the pendency of the action. Answers were served by the defendants in this action denying fraud, but containing no counterclaim, and upon the 6th of June, 1895, prior to the commencement of the present action, the temporary injunction was, upon motion, dissolved so far as it affected *William F. Koch*. In this action in equity, the various attaching creditors were respectively represented by the same attorneys who represented them in the attachment actions, and who now represent them in this action. This brings us naturally to the consideration of one of the grounds of error urged by the defendants.

The pendency of this so-called action in equity was alleged in the answer, and it was claimed that it was a good plea of another action pending between the same parties for the same purpose. The issue was tried by the court, and overruled, and it seems very plain that the ruling was right. The equity action was not an action between the same parties. It was not for the same purpose, nor could the same relief be obtained in it by *Koch* if successful. *Wood v. Lake,* 13 Wis. 84–92. It involved one question which was involved in the present action, namely, the question of fraud in the execution of the mortgage, but it did not involve nor could any judgment which might be rendered in it grant *Koch* any of the relief to which he would be entitled in the present action in case he recovered judgment. If *Koch* won the equity action, he would have to sue over again at law to obtain his damages for the conversion of the stock of goods. Again, the sheriff was not a party to the action in equity, and *Koch* was certainly entitled to his action at law against the sheriff to compel him to pay for the property converted; nor could he be deprived of his common-law remedy in that behalf by the commencement by other persons of a supposed action in equity. The proposition seems so self-evident that authorities are scarcely necessary.

At the close of the plaintiff's case, Mr. Sutherland, who represented three of the attachment creditors whose attachments were levied after some seven or eight prior writs had been levied, moved for a nonsuit as to his clients, and at the close of the evidence he moved the court to direct a verdict for his clients on the ground that the goods had been previously seized by the sheriff under the earlier writs. Mr. Malone also moved at the close of the case to dismiss the action as to all the defendants whom he represented except the defendants *Shakman & Co.*, on the ground that there was no evidence to sustain a verdict against any of the other defendants. All these motions were overruled, and error is alleged upon the rulings. In support of the motions it is

claimed that the goods were converted by the sheriff once for all when he seized them on the *Shakman* writ, and that, consequently, when the sheriff received the subsequent writs he did not convert the property by simply indorsing upon the writs a return of a levy subject to the previous levies. There is very respectable authority to the effect that, if the taking upon the first writ was wrongful, then the plaintiff was still, in contemplation of law, the possessor of the goods, and could maintain an action against a subsequent attaching creditor and the sheriff. *Cox v. Hall*, 18 Vt. 191. It is unnecessary, however, in this case, to decide that question, because it appears that all the attaching creditors and their indemnitors became jointly liable with the sheriff for the conversion of plaintiff's goods. Had the creditors who attached after *Shakman & Co.'s* writ was levied done nothing more than place their writs in the hands of the sheriff, and direct him to levy upon the goods, it seems probable that they would not have been jointly liable with *Shakman & Co.*, in the absence of some proof showing concert of action. *Sparkman v. Swift*, 81 Ala. 231; *Lee v. Maxwell*, 98 Mich. 496.

In this case, however, it appears that there was concert of action on the part of all the creditors after the seizure by the sheriff, and this fact appears by such evidence as to be conclusive. In the first place, it is shown that three of the attorneys for the attaching creditors (who had no interest in the matter except as representing their clients) were present at the sales, and directed the sheriff in making them. These attorneys represented all of the creditors save three firms who are represented by Mr. Sutherland. Before the sheriff's sales were finished, however, another step was taken by the attaching creditors, including Mr. Sutherland's clients, which certainly establishes beyond dispute joint action and liability upon the part of all of them, and that step was the

commencement of the so-called action in equity. By this act they obtained an injunction preventing the plaintiff from claiming his property, or even commencing an action to recover it, while a large part of it was still in the hands of the sheriff, and he was every day disposing of a portion of it. It is much as if they had all joined in holding the owner of personal property while another person was making off with it. There is no escape from the conclusion that by this joint act of active participation in and protection of the sheriff's illegal conversion the attaching creditors and their indemnitors (who evidently indemnified the sheriff against the consequences of his proceedings) all became jointly liable with the sheriff. While they may not have been jointly liable in the beginning, they chose to band together and assist the sheriff in his subsequent sale of the property, and thus became joint tort-feasors. *Lovejoy v. Murray*, 3 Wall. 1. The motion to dismiss the action as to all except the sheriff and the first attachment creditor was therefore properly denied.

There were some exceptions to rulings upon evidence, but they are not of sufficient importance to require discussion. There was no ruling which could affect the questions upon which the case was decided, and hence there was no prejudice even if there was technical error.

We have now discussed all the assignments of error which go to the merits and which seem to require discussion, and have found no prejudicial error as to all of the defendants who were attaching creditors, or who signed bonds of indemnity to the sheriff. There are four defendants, however, who appear simply to have signed undertakings upon attachment, and who do not appear to have signed any indemnity bonds, nor participated in any way in the acts of the sheriff; and we do not see how they can be held liable in this action. Their undertaking simply was an agreement that they would pay the *defendant in attachment*, George G.

Koch, all damages and costs which he might sustain, not exceeding $250, in case he recovered judgment. They gave no undertaking requiring them to respond to the plaintiff here, nor any third person, and, in the absence of proof showing any act on their part either directing the sheriff to levy on the plaintiff's property or participating in the levy after it was made, we see no ground to hold them liable. These defendants are *J. B. Perry, E. A. Cary, John Hughes,* and *J. A. Merryman,* and as to them the judgment must be reversed *in toto.*

Some questions arise upon the taxation of costs which require consideration. The summons contained three folios and the complaint 179 folios, of which 160 folios consisted of an itemized schedule of the stock of goods in question. Costs were taxed for these papers as follows:

Draft summons, 3 fols., 25c.................................... $    75
1 copy eng.  1 copy keep.  33 serve.  105 fols., 12c............    12 60
Draft complaint, 179 fols., 25c...............................    44 75
1 copy eng.  1 copy keep.  33 serve.  6,265 fols., 12c..........   751 80

This taxation of costs was certainly an abuse. The plaintiff was entitled to tax for draft of each paper and for three copies, viz. one engrossed copy, one to keep, and one to serve. *Duncan v. Erickson,* 82 Wis. 128. He was not entitled to make and charge for thirty-three copies to serve simply because there were thirty-three defendants. It is the sheriff's duty to make copies of the summons and complaint to serve upon the various defendants. R. S. sec. 731, subd. 4. There is, however, another manifest abuse here, which is of greater importance, which is so glaring that the court will correct it upon taxation of costs, and that is the charge for copies of 160 folios of complaint which consisted simply of an itemized inventory of the entire stock of goods. It was not necessary to attach such a list to the complaint. The goods should have been described in general terms, and a list could have been demanded and furnished afterwards, if necessary.

Koch vs. Peters and others.

The taxation of the items above named should have been as follows:

| | |
|---|---:|
| Draft summons, 3 fols., 25c | $ 75 |
| 3 copies, engrossing, keep, and serve, 9 fols., 12c | 1 08 |
| Draft complaint, 19 fols., 25c | 4 75 |
| 3 copies, engrossing, keep, and serve, 57 fols., 12c | 6 84 |

There was also taxed $9.10 for drawing affidavits and resisting a motion to change venue. As the plaintiff was successful in this motion, and recovered $10 motion costs, he cannot tax these items in the bill of costs. The costs allowed on the motion are intended to cover these very things. Costs were allowed for two copies of the judgment, one an engrossed copy and one to keep. This, we think, was correct.

Objection is made to the taxation of double fees for travel of witnesses. It appears that the case was set for trial for a day certain, and that the plaintiff with his witnesses attended on that day, and that the court was then engaged in other business and could not take up the cause, and it was set for another day, and the witnesses went home, and returned on the adjourned day. Under these circumstances we think the charge was correct.

The reduction in the cost bill as indicated above amounts to $805.58. As to this amount the judgment must be reversed.

*By the Court.*— Upon the appeal of the defendants *Perry, Cary, Hughes,* and *Merryman* the judgment is reversed, with costs, and as to them the action is remanded for a new trial; upon the appeal of the remaining defendants so much of the judgment as adjudges the recovery of more than $361.46 costs is reversed, and the remainder of the judgment is affirmed, with costs. No costs are awarded to the last-named appellants, because, upon the merits of the case, the respondent has been wholly successful.