Estate of Rasmussen : Wirtz and others, Appellants, vs. Jensen, Administrator, Respondent.

*April 16—July 7, 1941.*

For the appellants there were briefs by *Taylor, Phillips & Taylor* of Kenosha, and oral argument by *Matt Taylor*.

For the respondent there were briefs by *Cavanagh, Stephenson & Mittelstaed* of Kenosha, and oral argument by *R. S. Stephenson* and *G. A. Mittelstaed*.

The following opinion was filed May 20, 1941:

FRITZ, J. As there was a joint trial of the three claims and there is but one record in the trial court and on the appeals from the judgments, but one opinion is filed in disposing of them. Matt A. Rasmussen died about December 1, 1932. He owned and operated a produce commission business and an eight-hundred-acre farm for many years. For some time prior to his death his farm was heavily mortgaged to secure indebtedness which was considerably in excess of the value of the farm. Unsecured claims totaling $111,403.93 were filed against his estate. The appraised value of the personal property of his estate was but $36,497.37, and all of it was subjected to each of the three mortgages, given by Rasmussen to the claimants, Margaret Wirtz, Elizabeth Wirtz, and Bernice R. Ludwig, to secure their respective claims. Margaret Wirtz was the mother-in-law of Rasmussen; her daughter Elizabeth Wirtz was his bookkeeper and clerk since 1922; and Bernice R. Ludwig was his daughter by a former marriage. Margaret Wirtz's claim is based in part on a promissory note for $5,300, payable to her and executed by Rasmussen under date of March 17, 1932, and $500 have been paid on this claim and it is now undisputed. She also claims $3,200 on another note payable to her and executed by Rasmussen under date of March 17, 1932. She claims the consideration therefor was moneys loaned by her to Rasmussen over a period of many years, and which, with accrued interest, made up the total of $3,200. No records were produced to establish these loans, but there was parol testimony by Margaret and Elizabeth Wirtz and some corroborating evidence upon which the court found, although somewhat in doubt, that there was sufficient proof to establish an antecedent debt as the consideration for

the note of $3,200; and thereupon the court allowed Margaret Wirtz's claim at $8,000 with interest, as evidenced by Rasmussen's notes. Elizabeth Wirtz's claim for $2,000 was based on a note for that amount executed by Rasmussen under date of October 26, 1932. She claimed the consideration therefor was balances which she testified were owing to her from time to time for unpaid salary. There was some other testimony and corroborating evidence, and although the court was likewise in doubt, it finally found that there was sufficient proof to establish an antecedent debt, and thereupon allowed the claim at $2,000, as evidenced by Rasmussen's note. Upon motions to review filed by the administrator under sec. 274.12, Stats., it is contended the court erred in allowing the claim of Margaret Wirtz, in so far as it was based on the note for $3,200; and also erred in allowing Elizabeth Wirtz's claim on her $2,000 note. In connection with these contentions the administrator claims that the evidence does not admit of finding that these notes are supported by consideration.

The administrator's contentions and claims in these respects cannot be sustained. Although there is some occasion for doubt, there was sufficient proof, when considered in connection with the rule that "The notes themselves were presumed to have been issued for a valuable consideration" (sec. 116.29, Stats.; *Estate of Flierl,* 225 Wis. 493, 499, 274 N. W. 422), to reasonably admit of the findings in question; and under these circumstances they must be sustained. Bernice R. Ludwig's claim for $3,000 was based on notes for $1,078.68 and $1,921.32, executed by Rasmussen under dates of January 11, 1931, and October 28, 1932, respectively. Elizabeth Wirtz testified that the notes represented the accrual of notes of many years by compounding interest yearly on notes in smaller amounts which she found at the office when she started working for Rasmussen; that she did not recall the original amounts of the notes; that she understood that the money was insurance money on the life of Bernice's mother, who died

when Bernice was four years old, and that her father had used the money. The claimant testified she did not know the name of the company that paid the insurance, and her only testimony as to any consideration paid by her was that she had at one time let her father have $50. The court found,—

"That there is no evidence showing or tending to show the amount of insurance money claimed to have been payable to claimant and received and used by said Matt A. Rasmussen, nor is there any evidence as to the identity of the life insurance company from which it is alleged said money was collected;" and

"That the evidence offered by claimant in support of the validity of said notes is without probative value and wholly insufficient to establish consideration, and the court finds that said notes were and are without consideration and were and are void."

The court concluded that Rasmussen's estate is not liable to the claimant in the sum of $3,000, or any other sum. As a review of the record discloses that the court was warranted in considering the evidence of no probative value and insufficient to establish consideration for the notes in question, its findings and conclusion in respect to Bernice R. Ludwig's claim must be sustained also.

In relation to the three chattel mortgages given, respectively, (1) to secure Margaret Wirtz's notes for $8,500, and dated March 17, 1932, and filed October 28, 1932, (2) to secure Elizabeth Wirtz's note for $2,000, and dated and filed on October 28, 1932, and (3) to secure Bernice R. Ludwig's notes for $3,000, and dated and filed October 29, 1932, the court found that Rasmussen was insolvent when he executed these mortgages and that practically all of his personal property was subjected thereto; that at the time of giving the mortgages Rasmussen stated to Chris A. Jensen, the superintendent of his farms, his intention to hinder, delay, and defraud his other creditors by the making of mortgages to claimants, and that they were merely given to protect himself

against his creditors and not for a valuable consideration; that Elizabeth Wirtz was Rasmussen's bookkeeper for years prior to his death and occupied a confidential relationship toward him and was fully informed as to his affairs and financial condition; that she prepared the notes and the chattel mortgages involved herein, and knew of Rasmussen's insolvency at the time of their execution and delivery, and that they would hinder his creditors; and that she acted also as the agent of Margaret Wirtz in the transactions relating to the latter's notes and mortgage, and that as such agent her knowledge regarding Rasmussen's insolvency is imputed to Margaret Wirtz. The court further found that the claimants knew or as ordinarily prudent persons should have known that at the time of the giving of the mortgages, Matt A. Rasmussen was in financial difficulty and insolvent; that the mortgages disclosed on their face that all or virtually all of his property was included in the mortgages, and that they included also even the crops to be grown on decedent's farm in the following year, 1933; that these facts and circumstances known to the claimants were sufficient to impute to them notice or knowledge of decedent's intent to hinder or delay his creditors, or to arouse in their minds, as ordinarily prudent persons, a suspicion as to the good faith of the transaction and to cause them to make inquiry as to the purpose for which the mortgages were made; that such inquiry would have disclosed Rasmussen's intent to hinder, delay, or defraud his creditors; that the mortgages were not executed or delivered or received in good faith, but were executed and delivered by mortgagor and received by mortgagees with the knowledge and intention that he would thereby be rendered insolvent; and that they were executed and delivered without fair consideration and are fraudulent and void as to Rasmussen's creditors, who are entitled to have them set aside and voided. Upon these findings the court concluded as to each claimant that the mortgage delivered to her be declared void and of no effect.

A review of the evidence discloses that it fairly admits of and fully sustains the court's findings and conclusions because of which it rightly held that the mortgages were fraudulent and void on several grounds. They were fraudulent under sec. 242.04, Stats., which provides:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

"Fair consideration" is defined in sec. 242.03, Stats., to be given "When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained." Under this definition the mortgages were clearly given without a fair consideration in that to secure the total amount of $13,500,—*i. e.,* $8,500 to Margaret Wirtz, $2,000 to Elizabeth Wirtz, and $3,000 to Bernice R. Ludwig,—Rasmussen conveyed by each mortgage personal property, the value of the remainder of which,—after having shipped one hundred twenty-one head of cattle, in addition to farm produce shipped in carload and truckload lots on every business day from October 27, 1932 (the approximate date of the mortgages), to December 1, 1932 (the date of Rasmussen's death),—was appraised as of that date at $36,497.37, and was ultimately sold by the administrator in April, 1933, for $18,336.35. Thus the value of the property mortgaged was then, undoubtedly, several times greater than the total indebtedness that was to be secured thereby.

Furthermore, the mortgages were fraudulent under the provisions in sec. 242.05, Stats., that,—

"Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in

his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent."

As the property subjected to the three mortgages constituted all of Rasmussen's personal property, at a time when his real property was mortgaged to secure indebtedness greatly in excess of its value, there remained in his hands nothing of value to enable him to engage in his business or transactions. Consequently, in this respect the mortgages were also clearly fraudulent under sec. 242.05, Stats., "without regard to his actual intent."

Claimants seek, however, to avoid the above-stated consequences under secs. 242.03 to 242.05, Stats., by their contention that they did not participate in Rasmussen's fraudulent purpose and that unless there was such participation by them, actual knowledge on their part of his intent would not render the mortgages invalid as to them. They rely on the rule that "to render fraudulent such a transfer of property to pay a *bona fide* debt, the creditor must participate in the fraudulent purpose of his debtor." *Bleiler v. Moore,* 94 Wis. 385, 69 N. W. 164; *Koch v. Peters,* 97 Wis. 492, 497, 73 N. W. 25. This rule is, however, not applicable when the fraudulent transfer is made without consideration or, as in the case at bar, but for consideration which is grossly disproportionate as compared to the value of the property. As the court said in *Hersh v. Levinson Bros., Inc.,* 117 N. J. Eq. 131, 134, 174 Atl. 736,—

"In the case of a voluntary conveyance, or one which is found to be voluntary as to the excess over proper consideration, the participation of the grantee or transferee in the fraudulent intent is not essential. . . . This rule has not been modified by the Uniform Fraudulent Conveyance Act."

To the same effect see *American Trust Co. v. Kaufman,* 287 Pa. 461, 135 Atl. 210; *Willamette Grocery Co. v. Skiff,*

118 Or. 685, 248 Pac. 143. Although there must be proof, when there has been fair and adequate consideration, that the grantee participated in the fraudulent intent, in order to support a finding that the transaction is void as to creditors, the inference that it was done with fraudulent intent is readily drawn where it appears that a person heavily indebted has transferred his property upon grossly inadequate consideration. *Massey v. Richmond*, 208 Wis. 239, 247, 242 N. W. 507. Consequently, because the value of the property covered by the mortgages in the case at bar was greatly in excess of the indebtedness secured thereby, participation by the mortgagees in Rasmussen's fraudulent purpose was not essential, and if there had been a failure to establish such participation it would have been immaterial.

It follows that the judgments must be affirmed.

*By the Court.*—Judgments affirmed.

A motion for a rehearing was denied, with $25 costs, on July 7, 1941.