BADGER STATE BANK, Plaintiff-Appellant,

v.

Roger A. TAYLOR, Rodney J. Taylor and Economy Feed Mill, Defendants-Respondents.†

Court of Appeals

*No. 03–0750. Submitted on briefs June 30, 2003.—
Decided December 4, 2003.*

2004 WI App 17

(Also reported in 674 N.W.2d 872.)

† Petition for review granted 4-20-04.

775

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *F. Mark Bromley*, Platteville.

On behalf of the defendants-respondents, the cause was submitted on the brief of *James P. Czajkowski* of *Czajkowski & Rider, S.C.*, Prairie du Chien.

Before Deininger, P.J., Dykman and Lundsten, JJ.

¶ 1. DEININGER, P.J. Badger State Bank appeals an order in which the trial court granted summary

judgment to Roger and Rodney Taylor, dismissing the Bank's complaint alleging that the Taylors were the recipients of a fraudulent transfer. The Bank claims the court erred in denying its motion for summary judgment and granting the Taylors'. We agree, reverse the appealed order, and remand for entry of judgment in favor of the Bank.

## BACKGROUND

¶ 2. Badger State Bank made business loans to an entity known as Vogt's Ag-Tech West, Inc., whose principal shareholder was Ronald N. (Al) Vogt. The Bank held a perfected security interest in Ag-Tech's assets, specifically including the corporation's accounts receivable. The Taylors do not dispute that, at the time of the transaction at issue, Ag-Tech was "insolvent" within the meaning of the Uniform Fraudulent Transfer Act because its debts exceeded its assets. *See* WIS. STAT. § 242.02(2) (2001–02).[1]

¶ 3. Al Vogt also owned another company, A&T Livestock, LLC. Both Ag-Tech and A&T did business with the Taylors' Economy Feed Mill—the Taylors bought supplies for their feed business from Ag-Tech and sold feed to A&T Livestock. At the time of the allegedly fraudulent transfer, the Taylors owed Ag-Tech, the Bank's debtor, $12,489. At this same time, Vogt's other company, A&T, owed the Taylors almost $18,000. The Taylors and Vogt then agreed to offset these debts. Ag-Tech also paid an additional $2,350 by check toward A&T's remaining debt to the Taylors' feed business.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 4. The Bank sued the Taylors and their feed business to recover the amounts Ag-Tech paid or relinquished to them in the transaction described above. The Bank alleged that the transfers were fraudulent because Ag-Tech, which was then insolvent and indebted to the Bank, did not receive reasonably equivalent value in exchange for the transfers. The Bank sought a judgment voiding the transfers and granting it a judgment and lien against the Taylors for the amounts they received from Ag-Tech.[2] The Taylors responded that they did not do business with either Ag-Tech or A&T but with Al Vogt personally, that the challenged transaction was solely between the Taylors and Vogt, and that the transaction did not involve the debtor corporation.

¶ 5. The Bank moved for summary judgment, as did the Taylors. The Bank claimed it was entitled to judgment under the Uniform Fraudulent Transfer Act, WIS. STAT. ch. 242, specifically under § 242.05(1).[3] The Taylors maintained, however, that they believed Ag-Tech and A&T were sole proprietorships and they denied any knowledge of the Bank's security interest in Ag-Tech's assets. They also contended that the transfers did not violate the Uniform Fraudulent Transfer Act because they had acted in good faith and gave reasonably equivalent value.

---

[2] The Bank's complaint and its argument on summary judgment appear to seek the recovery of both the $12,489 account owed by the Taylors to Ag-Tech and the $2,350 check on Ag-Tech's account paid to the Taylors. We note, however, that in its opening brief to this court, the Bank requests us to direct judgment in its favor for only $12,489. (See footnote 5.)

[3] WISCONSIN STAT. § 242.05(1) is quoted in the analysis at ¶ 9.

¶ 6. The trial court determined that it was undisputed that Vogt dealt with the Taylors "without reference to those legal entities [Ag-Tech and A&T]." The court then concluded that the $12,489 the Taylors owed "was not an asset of the corporation [Ag-Tech]. It was an asset of Al Vogt personally." Accordingly, the trial court denied the Bank's summary judgment motion, granted the Taylors' motion and dismissed the Bank's complaint.

## ANALYSIS

¶ 7. We review the granting and denial of motions for summary judgment de novo, applying the same methodology and standards as the trial court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is proper when the pleadings, answers, admissions and affidavits show no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Maynard v. Port Publ'ns, Inc.* 98 Wis. 2d 555, 558, 297 N.W.2d 500 (1980). We will reverse a decision granting summary judgment if the trial court incorrectly decided legal issues or if material facts are in dispute. *Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993). When both parties move for summary judgment and neither argues that factual disputes bar the other's motion, the " 'practical effect is that the facts are stipulated and only issues of law are before us.' " *See Lucas v. Godfrey*, 161 Wis. 2d 51, 57, 467 N.W.2d 180 (Ct. App. 1991) (quoted source omitted).

¶ 8. Statutory interpretation also presents a question of law which we decide de novo. *City of Milwaukee*

*v. Dyson*, 141 Wis. 2d 108, 110, 413 N.W.2d 660 (Ct. App. 1987). When interpreting a statute, we first look to the language of the statute itself. *Id.* If the statutory language is plain and unambiguous, we do not resort to extrinsic aids for assistance in statutory construction. *Id.*

¶ 9. The Bank claims that the cancellation of the amount owed by the Taylors to Ag-Tech constituted a fraudulent transfer under WIS. STAT. § 242.05(1), which provides in relevant part as follows:

> A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time . . . .

*Id.* As applied here, the Bank maintains that: (1) it is a creditor of Ag-Tech whose claim against Ag-Tech arose before the cancellation of the Taylors' debt; (2) Ag-Tech made a transfer to the Taylors by canceling their indebtedness to the corporation and did not receive "reasonably equivalent value in exchange for the transfer"; and (3) Ag-Tech was insolvent at the time.

¶ 10. The Taylors do not dispute that the Bank was a creditor of Ag-Tech whose claim against Ag-Tech arose before the transaction at issue. The Taylors also do not assert that Ag-Tech was not insolvent within the meaning of the Uniform Fraudulent Transfer Act at the time in question or that a factual dispute exists in this regard. Rather, their defense to the Bank's action centers on the second element noted above. The Taylors contend that *Ag-Tech* made no transfer in their favor because they believed they were dealing with Al Vogt personally, not the corporation. Moreover, the Taylors

claim to have parted with "reasonably equivalent value" by offsetting the $12,489 they owed against the higher sum owed them by Vogt's livestock business.

¶ 11. We agree with the Bank, however, that the plain language of Wis. Stat. § 242.05(1) requires us to view the transaction exclusively from the perspective of the debtor corporation, Ag-Tech. What the Taylors may have believed regarding with whom they were dealing is irrelevant to the analysis under § 242.05(1). Our reading of the statutory language, and our review of the record on summary judgment, satisfies us that the Bank has established its entitlement to the relief it seeks from the Taylors.[4] Specifically, the "debtor," Ag-Tech, at a time when it was "insolvent," made a "transfer" by writing off an account receivable from the Taylors "without receiving a reasonably equivalent value in exchange for the transfer." *See id.*

¶ 12. We acknowledge that this result may seem harsh. The Taylors are ostensibly innocent of any wrongdoing but will be required to pay the Bank some $12,500 or more.[5] The trial court essentially concluded that the record provided no indication that the Taylors were guilty of any fraud because of their belief that they

---

[4] *See* Wis. Stat. § 242.07(1) (providing that a prevailing creditor may "avoid[ ] . . . the transfer" and attach or obtain other remedies "against the asset transferred or other property of the transferee").

[5] As we have noted (see footnote 2), it is not entirely clear whether the Bank seeks to recoup only the $12,489 account receivable, or additionally, the $2,350 check from Ag-Tech to the Taylors. On remand, the trial court should determine the amount of the Bank's damages and the specific remedies to be ordered in the judgment.

781

had given fair value for the cancellation of their indebtedness by doing likewise for the benefit of another of Vogt's businesses. WISCONSIN STAT. § 242.05(1), however, does not require a showing that a transferee possessed fraudulent intent. *See Wirtz v. Jensen*, 238 Wis. 334, 341, 298 N.W. 172 (1941).[6] The statute reaches not only "fraud in fact" but "fraud in law" or "constructive fraud." *See Scholes v. Lehmann*, 56 F.3d 750, 756–57 (7th Cir. 1995). As we have noted, under the plain language of § 242.05(1) the Bank is required to show only that its debtor, Ag-Tech, while insolvent, made a transfer "without receiving a reasonably equivalent value in exchange," regardless of the intent or motives of any of the parties to the transaction.

¶ 13. The trial court in this case is by no means alone in being tempted to "balance the equities" and deny a creditor a recovery from an innocent transferee.[7] In affirming a $500,000 judgment against five religious

---

[6] The supreme court rejected in *Wirtz v. Jensen*, 238 Wis. 334, 341, 298 N.W. 172 (1941), an argument by transferees that an existing creditor of the transferor could not avoid transfers where they "did not participate in [the transferor]'s fraudulent purpose." The court concluded that " '[i]n the case of a voluntary conveyance the participation of the grantee or transferee in the fraudulent intent is not èssential. This rule has not been modified by the Uniform Fraudulent Conveyance Act. *Id.* (quoted source omitted).

The statutes at issue in *Wirtz* were a part of the earlier "Uniform Fraudulent Conveyance Act" as enacted in Wisconsin. The legislature repealed and recreated WIS. STAT. ch. 242 effective April 8, 1988. *See* 1987 Wis. Act 192. The parties have not called to our attention, nor have we discovered, any Wisconsin case law interpreting the present WIS. STAT. § 242.05.

[7] In its oral decision the trial court expressed its belief that "it would be an [i]nequitable decision to make [the Taylors] responsible under these circumstances."

corporations who were the recipients of gifts deemed fraudulent conveyances, the Seventh Circuit said this:

> The arguments for mitigating the full rigor of the fraudulent conveyance statute with respect to religious associations may be appealing but they are addressed to the wrong body. The statute makes no distinction among different kinds of recipient of fraudulent conveyances. Every kind is potentially liable . . . . The carving of exceptions is a task better left to the legislature. Statutory draftsmen might for example want to make distinctions based on the degree of negligence of the ultimate beneficiaries of the suit to set aside the fraudulent conveyance. They can do it better than a court can. They could of course authorize courts to engage in an ad hoc balancing of equities, as courts do for example in deciding whether a claim is barred by the equitable defense of laches; and perhaps in this case the balance would incline in favor of the charities. But nothing in the text or history of the Illinois statute or its counterparts in other states provides any purchase for this "interpretation," which would in fact be a radical rewriting of the statute.

*Scholes*, 56 F.3d at 761. We conclude that we are similarly bound to apply WIS. STAT. § 242.05(1) as written, regardless of the equities of the case before us.

¶ 14. The Taylors make two other arguments, both of which are similarly unavailing. First, they assert that the instant transaction was not a fraudulent transfer under WIS. STAT. § 242.04 (pertaining to transfers that are "fraudulent as to present and future creditors") because there is no showing of either an "actual intent to hinder, delay or defraud" the Bank, or that the Taylor-Vogt transaction materially affected Ag-Tech's financial condition. The Bank does not base its claim on § 242.04, however, but on WIS. STAT. § 242.05(1). The fact that the Taylors might have a

successful defense on this record under the former section has no bearing on whether they have one under the latter.

¶ 15. Finally, the Taylors assert that, under WIS. STAT. § 242.08(1), their good faith in entering into the transaction with Vogt provides them a complete defense to the Bank's claim. Again, however, they are mistaken because the good-faith defense under § 242.08(1) applies only to claims made under WIS. STAT. § 242.04(1)(a).

## CONCLUSION

¶ 16. For the reasons discussed above, we reverse the appealed order and remand to the circuit court for further proceedings consistent with this opinion. Specifically, we direct that judgment be entered in favor of the Bank after the circuit court determines the amount of the judgment and the nature of any other remedies to which the bank may be entitled.

*By the Court.*—Order reversed and cause remanded with directions.