Nix, Respondent, vs. Wiswell and another, Appellants.

*February 2 — February 21, 1893.*

*Chattel mortgages: Failure to renew: Subsequent purchaser in good faith.*

1. A chattel mortgage need not be renewed, under sec. 2315, R. S., in order to preserve its validity as against one who purchased within two years after its filing, although he had no actual knowledge of the mortgage.
2. A purchaser of mortgaged chattels who, as a part of the consideration, assumes the payment of the debt secured by the mortgage, is not a purchaser "in good faith," within the meaning of sec. 2315, R. S., even though he had no notice of the existence of the mortgage.

APPEAL from the Circuit Court for *Walworth* County.

The defendant *Charles F. Hall,* being the owner of fifteen acres of land described, with the Pishcotaqua Hotel thereon and the furniture therein, situated on the shore of Lake Geneva, borrowed of one William A. McConnell $16,000, May 18, 1883, and gave him therefor two notes, each signed by himself and one Shepard, each payable five years after date, one for $6,000 and the other for $10,000, and to secure said notes the said *Hall* and wife at the same

time executed and delivered to said William A. McConnell a mortgage on said real estate for the full amount, which mortgage was recorded in the register's office May 23, 1883, and at the same time the said *Hall*, to secure both of said notes, executed and delivered to said William A. McConnell a chattel mortgage upon said personal property, which was duly filed May 22, 1883. On April 24, 1885, the said *Hall* sold said real estate and said personal property to one Charles H. Nix, and on that day he and his wife executed and delivered to said Charles H. Nix a deed of said real estate, which deed stated, in effect, that said real estate was free from all incumbrance whatever, except two certain notes and mortgages for $16,000, payable May 18, 1888, with seven per cent. interest, and that he would warrant and defend the same except against said notes and mortgage, which deed was recorded October 19, 1886. On April 24, 1885, the said *Charles F. Hall* also gave to said Charles H. Nix a bill of sale of all said personal property, absolute in form.

On May 17, 1886, the said Charles H. Nix sold, conveyed, and transferred all of said real and personal property to Hattie A. and James Hanley, in consideration of $35,000 paid and to be paid therefor. As a part thereof said $16,000 indebtedness to McConnell was assumed by them. To secure $7,000 of said purchase price the said Hanleys, on the day last named, executed and delivered to said Charles H. Nix a chattel mortgage or transfer in trust, wherein they granted, bargained, sold, assigned, and made over unto one William Prescott all of said personal property, in trust and as trustee, and his successor in trust thereunder, upon the express condition that if said Hanleys should pay to the legal or equitable holder of their certain promissory note for the said sum of $7,000, which they had that day made, payable to the order of themselves, and duly indorsed by them, and delivered to said Charles H. Nix, due in two

years thereafter, then said instrument should be void and of no effect. Said chattel mortgage was duly filed February 2, 1887.

In January, 1887, the owners of said McConnell real-estate mortgage commenced the foreclosure thereof, and the following named persons were made defendants therein: Said *Hall* and wife, said Shepard, said Charles H. Nix, said Hattie A. and James Hanley, and others. Such proceedings were had therein that judgment of foreclosure and sale was entered therein June 14, 1887, for $17,518.96. On October 9, 1888, the said real estate was sold on said judgment of foreclosure and sale to one J. W. Cook for the sum of $15,500, leaving a deficiency, but said Cook repudiated said purchase, and no money was paid thereon, nor any deed delivered therefor. On October 15, 1888, said sale was therefore vacated and set aside, and a resale of said premises ordered, and the same were resold by the defendant *Wiswell,* as sheriff, December 11, 1888, to the defendant *Charles F. Hall* for the sum of $10,500, leaving a deficiency of $9,835.12, for which judgment was entered on confirming said last-mentioned sale, December 21, 1888. On October 10, 1888, the said *Wiswell,* as such sheriff, took possession of all said personal property under and by virtue of said McConnell chattel mortgage, and continued to hold the same. On October 13, 1888, said personal property was sold to the plaintiff on said Hanley chattel mortgage for the sum of $3,000. On January 7, 1889, the plaintiff commenced this action against said *Wiswell,* as such sheriff, and said *Charles F. Hall,* for the unlawful conversion of said personal property, to her damage in the sum of $3,500 and costs. On January 24, 1889, the defendants separately answered, and justified the taking and conversion of said personal property under said McConnell chattel mortgage.

The issues so formed came on for trial, and at the close thereof the jury returned a special verdict to the effect

(1) that said Charles H. Nix did not have actual notice of the *Hall*-McConnell chattel mortgage before he sold the property in question to the Hanleys; (2) that the Hanleys purchased said personal property from said Nix for value, and without notice of the existence of the *Hall*-McConnell chattel mortgage; (3) that the fair market value of the personal property in controversy on October 13, 1888, was $2,500; (4) that October 10, 1888, said *Wiswell* took possession of said personal property by the direction of the executors of said William A. McConnell, deceased, under and by virtue of the *Hall*-McConnell chattel mortgage; (5) that said *Wiswell*, by himself or his agents, retained possession of said personal property up to and until after the alleged sale to the plaintiff herein, October 13, 1888; (6) that said *Charles F. Hall* did, on October 13, 1888, direct or advise said *Wiswell* to retain possession of said personal property; (7) that the plaintiff, *Lydia Nix*, had notice that said *Wiswell* claimed to hold the personal property in controversy by virtue of the McConnell mortgage before she bid it in at the alleged sale, October 13, 1888; (8) that the attorney for the plaintiff announced, just before the alleged sale, that the personal property was to be sold under the Hanley chattel mortgage, claimed to be owned by Mrs. Meisch; (9) that from the time said Charles H. Nix resumed control of the personal property in controversy upon its surrender to him by the Hanleys in the fall of 1887, and in his subsequent acts, transactions, and declarations with reference to the same while in his possession or control down to the time of the taking thereof by *Wiswell*, the said Mrs. Meisch, a sister of said Charles H. Nix, was the real party represented by him, and in whose behalf such acts, transactions, and declarations were made or done, and that said Charles H. Nix in those matters did not act for himself, but for his said sister, Mrs. Meisch.

The court thereupon granted the plaintiff's motion for

judgment upon said special verdict, and judgment was thereupon entered in favor of the plaintiff and against the defendants jointly for the value of the property as found by the jury, together with costs.    From this last judgment the defendants appeal.

*John B. Simmons*, attorney, and *T. D. Weeks*, of counsel, for the appellants, argued, among other things, that Mrs. Meisch, if she ever owned the mortgage at all, could not be relied upon as a *bona fide* holder, because there was no evidence that she took without notice, and having parted with nothing she was not a purchaser for value. *Everts v. Agnes*, 4 Wis. 343; *Jenkins v. Schaub*, 14 id. 1; *Bowman v. Van Kuren*, 29 id. 209; *Body v. Jewsen*, 33 id. 409; *Matteson v. Ellsworth*, id. 502; *Funk v. Paul*, 64 id. 35; *Manufacturers' Nat. Bank v. Newell*, 71 id. 309.   One who purchases mortgaged property while the effect of the registry continues in force, stands precisely in the place of the mortgagor and takes the property subject to the mortgage.   Jones, Chat. Mort. sec. 293; *Lowe v. Wing*, 56 Wis. 31; *Dillingham v. Bolt*, 37 N. Y. 198.   A *bona fide* subsequent purchaser is protected only to the extent he has paid the consideration. Wade, Notice, §§ 60, 92, 93; 2 Pom. Eq. Jur. §§ 750, 755; 16 Am. & Eng. Ency. of Law, §§ 834, 835, and notes; *Everts v. Agnes*, 4 Wis. 343; *Manufacturers' Nat. Bank v. Newell*, 71 id. 309; *Hamlin v. Wright*, 26 id. 50; *Thomas v. Stone*, Walk. Ch. 117; *Stone v. Welling*, 14 Mich. 514; *Dresser v. M. & I. R. Const. Co.* 93 U. S. 92; *Green v. Green*, 41 Kan. 472; *Wynn v. Carter*, 20 Wis. 107.   For cases holding that an unrecorded mortgage may be enforced against a purchaser without notice to the extent of the unpaid purchase money, see *Baldwin v. Sager*, 70 Ill. 503; *Haughwout v. Murphy*, 21 N. J. Eq. 118; *Hardin v. Harrington*, 11 Bush (Ky.), 367; *Warner v. Whittaker*, 6 Mich. 133; *Farmers' L. & T. Co. v. Maltby*, 8 Paige, 361; *Haescig v. Brown*, 34 Mich. 503; *Trustees of Union College v. Wheeler*,

61 N. Y. 88; *Wilson v. Hunter,* 30 Ind. 471; *Jewett v. Palmer,* 7 Johns. Ch. 65; *Tufts' Adm'r v. Tufts,* 18 Wend. 620; *Frost v. Beekman,* 1 Johns. Ch. 288; *Merritt v. Lambert,* Hoff. Ch. (N. Y.), 170.

For the respondent there was a brief by *Wallace Ingalls,* attorney, and a separate brief by *Quarles, Spence & Quarles,* of counsel, and oral argument by *Mr. Ingalls* and *J. V. Quarles.* They contended, *inter alia,* that though the legal title had again come to C. H. Nix from the Hanleys, in the absence of fraud he would have acquired the position of a *bona fide* owner without notice, and would have acquired all the rights and privileges of the Hanleys. *Kinney v. Kruse,* 28 Wis. 190; *Pringle v. Dunn,* 37 id. 467; *Verbeck v. Scott,* 71 id. 59; *Cromwell v. Sac Co.* 96 U. S. 59; Bigelow, Fraud, 402; *Tyler v. Safford,* 31 Kan. 608. A *bona fide* purchase of an estate for a valuable consideration purges away the equity from an estate, in the hands of all persons who may derive title under it, with the exception of the original party, whose conscience stands bound by the violation of his trust and meditated fraud. *Ely v. Wilcox,* 26 Wis. 91; *Troy City Bank v. Wilcox,* 24 id. 671; *Odell v. Rogers,* 44 id. 136, 180; *Kost v. Bender,* 25 Mich. 517; *Clark v. McNeal,* 114 N. Y. 294; *Johnson v. Gibson,* 116 Ill. 297; *Price v. Martin,* 46 Miss. 489.

CASSODAY, J.   It is conceded that at the time *Hall* conveyed the real estate and transferred the personal property to Charles H. Nix, April 24, 1885, no part of the principal sum of the indebtedness of $16,000 from *Hall* to McConnell had been paid, but the same remained a subsisting debt, secured not only by the mortgage given by *Hall* to McConnell on the real estate, but also by the chattel mortgage given at the same time by *Hall* to McConnell on the personal property.   In fact, Charles H. Nix took the real and personal estate subject to those mortgages, and the

amount of such indebtedness was deducted from the purchase price which he was to pay to *Hall*. As indicated in the foregoing statement, that chattel mortgage was filed May 22, 1883. The statute applicable to such chattel mortgage provides that "every such mortgage shall cease to be valid, as against the creditors of the person making the same or *subsequent* purchasers or mortgagees in *good faith*, after the expiration of two years from the filing of the same or a copy thereof," unless renewed as therein prescribed. Sec. 2315, R. S. That chattel mortgage was never so renewed. Charles H. Nix was allowed to testify, against objection, to the effect that he had no knowledge of the existence of that chattel mortgage until he had sold and transferred the personal property, and conveyed the real estate to the Hanleys, May 17, 1886; and the jury found that he had no such knowledge. The contention is that, as the chattel mortgage was not so renewed, the same became, under the statute quoted, *ipso facto* void, even as against Charles H. Nix, at the end of the two years from the filing thereof, to wit; May 22, 1885. This court has, however, from the beginning construed that statute to the effect that, in the absence of such renewal, such mortgage would cease *to be valid as against* such creditors as should, *after* the expiration of the time for such renewal, seize the property, and such purchasers or mortgagees as should, *after* the expiration of said time, purchase the property or take a mortgage thereon in good faith, but that such renewal was unnecessary to preserve the rights of such mortgage3 to the property as against any and all *prior* seizures, transfers, and mortgages. *Newman v. Tymeson*, 12 Wis. 448; *Case v. Jewett*, 13 Wis. 498; *Lowe v. Wing*, 56 Wis. 31; *Rockwell v. Humphrey*, 57 Wis. 421; *Ullman v. Duncan*, 78 Wis. 217. In fact the court has gone so far as to hold that " a chattel mortgage which has been duly filed is valid as against a subsequent *bona fide*

purchaser of the property, although prior to his purchase the mortgage has disappeared from the files through the negligence or misconduct of the town clerk." *Marlet v. Hinman*, 77 Wis. 136. We must hold as a matter of law that Charles H. Nix was not a subsequent purchaser, nor a purchaser in good faith, within the meaning of the statute quoted; and hence that parol testimony to the contrary was improperly admitted.

2. The questions recur whether the Hanleys were such purchasers, and whether Mrs. Meisch and the plaintiff were such mortgagees in good faith. The Hanleys were certainly "subsequent" purchasers, within the meaning of that statute, for they did not purchase until after the expiration of the time for such renewal, to wit, May 17, 1886. The questions for consideration, therefore, are whether they were purchasers "in good faith," within the meaning of that statute, and whether Mrs. Meisch and the plaintiff, claiming under them, were such mortgagees in good faith. Upon the strength of the parol testimony admitted against objection, the jury found that they purchased from Charles H. Nix "for value and without notice of the existence of the *Hall*-McConnell chattel mortgage." They and Charles H. Nix all testify to the effect that the amount of the purchase price of the real and personal property together was $35,000. They all agree, in effect, that the Hanleys paid nothing down on the purchase, except to transfer to Charles H. Nix the Afton House lease in Chicago, and the furniture therein, some land in Marquette, Mich., and certain personal property, all of the aggregate value of about $12,000; but that the balance of the purchase price, amounting to $23,000, was to be paid by them in the manner following, to wit, that, in and by the deed from Charles H. Nix to them, they thereby assumed and agreed to pay the *Hall*-McConnell notes and mortgage, amounting to $16,000, and also executed and delivered to Charles H. Nix a prom-

issory note for $7,000, payable two years after its date, to the order of themselves, and by them duly indorsed, and secured by a real-estate mortgage executed by them on said Pishcotaqua Hotel, and also by the chattel mortgage executed by them to Prescott, as mentioned in the foregoing statement. It appears that Charles H. Nix continued in the actual possession of said $7,000 note and mortgage; and the jury found, in effect, that from the time said personal property was surrendered to him by the Hanleys in the fall of 1887, down to the time the same was taken by the defendant *Wiswell*, October 10, 1888, his acts, transactions, and declarations were made and done in behalf of his sister, Mrs. Meisch. Since Charles H. Nix's relation to the *Hall*-McConnell chattel mortgage was such that he could not become a purchaser in good faith of the personal property covered by that mortgage, it is very obvious that his sister, whom he so represented, could not be a mortgagee thereof in good faith, within the meaning of the statute quoted, especially as there is no evidence that she paid anything therefor. - The defendants claim under and by virtue of the *Hall*-McConnell chattel mortgage, and the plaintiff under and by virtue of the Hanley-Prescott chattel mortgage. The jury found, in effect, that the plaintiff, who is a sister-in-law of Charles H. Nix, at and before the time she bid in the personal property in question on the sale thereof under and by virtue of the Hanley-Prescott chattel mortgage mentioned in the foregoing statement, October 13, 1888, had notice that *Wiswell* claimed to hold the property in controversy by virtue of the *Hall*-McConnell chattel mortgage.

Such being the facts as found by the jury or undisputed, it is manifest that neither Mrs. Meisch nor the plaintiff can claim any protection as against the *Hall*-McConnell chattel mortgage, unless the Hanleys were purchasers of the property in good faith, within the meaning of the section of the

statute quoted; and hence the controversy turns upon the
question whether the Hanleys were such purchasers in good
faith under that section.  That section was enacted for the
purpose of protecting such purchaser against loss by reason
of such prior unrenewed chattel mortgage.  The purpose is
substantially the same as in the enactment of sec. 2241, R. S.,
in respect to the avoiding of unrecorded conveyances and
mortgages of real estate.   Under that section it was early
held by this court that "it is not sufficient that a subsequent
purchaser has purchased for a valuable consideration with-
out notice, *but the consideration must actually have been paid
before notice;* and, if a part of the consideration only has been
paid before notice, the purchaser will be protected only *pro
tanto.*"  *Everts v. Agnes,* 4 Wis. 343.   To the same effect,
*Wynn v. Carter,* 20 Wis. 107; *Prickett v. Muck,* 74 Wis. 206,
and cases there cited; *Shotwell v. Harrison,* 22 Mich. 410;
*Smith v. Williams,* 44 Mich. 240.   To constitute a *bona fide*
purchaser or mortgagee in a case like this, there must not
only be an absence of notice, but also a payment of the con-
sideration, or a fixed liability therefor.   *Funk v. Paul,* 64
Wis. 42, and cases there cited.  See cases cited in the brief of
counsel for the defendants.   As indicated, the Hanleys as-
sumed and agreed, as a part of the purchase price, to pay
the whole amount of the $16,000 indebtedness to McCon-
nell, and thereby made themselves personally liable for the
payment of that debt.   *Kimball v. Noyes,* 17 Wis. 695;
*Gray v. McDonald,* 19 Wis. 217; *Johannes v. Phœnix Ins.
Co.* 66 Wis. 57; *Ingram v. Osborn,* 70 Wis. 184.   Thus it
appears that the legal effect of the transaction between the
Hanleys and Charles H. Nix was to give to McConnell ad-
ditional security for the full amount of the *Hall*-McConnell
indebtedness by way of their personal obligations.  It logic-
ally follows that the Hanleys cannot be regarded as pur-
chasers of the personal property in good faith, as against
the prior *Hall*-McConnell chattel mortgage.  To hold other-

wise would make the statute quoted an instrument, not for the protection of the purchaser against loss of the property purchased, nor against the payment of more than he had contracted to pay, but as a means of relieving him from paying a portion of the purchase price, and destroying securities previously given therefor.

In view of the fact that the special verdict does not authorize a judgment in favor of the defendants, the judgment of the circuit court is reversed, and the cause is remanded for a new trial.

*By the Court.*— Ordered accordingly.

WINSLOW, J., took no part.