GRAHAM, Administratrix, Appellant, vs. PERRY and another, Respondents.

*November 7—December 3, 1929.*

212

213

214

For the appellant there was a brief by *Thompson, Myers & Helm* of Racine, and oral argument by *William D. Thompson.*

For the respondents there was a brief by *Simmons, Walker & Wratten* of Racine, attorneys for William H. Perry, and *Wilbershide, Baumblatt & Weismann* of Racine, attorneys for the Knudson Sales Company, and oral argument by *John B. Simmons* and *J. M. Weismann.*

ROSENBERRY, C. J. We have not attempted to make an exhaustive statement of the facts, but only such facts as are necessary to present the questions decisive of the case. The principal proposition urged by the plaintiff upon this trial is that the administratrix of the estate of Henry E. Graham represents creditors; that the failure of the mortgagees and their assigns to file renewal affidavits rendered the mortgages void and of no effect as to creditors, and that the defendant Knudson Sales Company had no lien upon the proceeds of the property sold under the stipulation.

There are two sections of the statutes which relate to the filing and renewal of chattel mortgages.

"Section 241.08. No mortgage of personal property shall be valid against any other person than the parties thereto unless the possession of the mortgaged property be delivered to and retained by the mortgagee or unless the mortgage or a copy thereof be filed as provided in section 241.10, except when otherwise directed in these statutes."

The mortgages here in question were filed before the

rights of any third party had accrued and no question is raised as to the sufficiency of the filing.

The second section is 241.11.

"*Affidavit of renewal.* Every such mortgage shall cease to be valid, as against the creditors of the person making the same or subsequent purchasers or mortgagees in good faith, after the expiration of two years from the filing of the same or a copy thereof, unless within thirty days next preceding the expiration of the two years the mortgagee, his agent or attorney shall make and annex to the instrument or copy on file in the office of the clerk mentioned in section 241.10, an affidavit," etc.

It has been held under the provisions of sec. 241.08 that that section rendered the mortgage invalid as to third parties even though when they purchased or took a subsequent mortgage upon the property they had actual knowledge of the prior mortgage. In other words, that the statute means what it says: that the mortgage is void as to every one except the parties thereto unless it is filed as provided by statute. *Parroski v. Goldberg,* 80 Wis. 339, 50 N. W. 191; *Dornbrook v. M. Rumely Co.* 120 Wis. 36, 97 N. W. 493.

The language of sec. 241.11 is not that the mortgage shall not be valid as against any other person than the parties thereto if the affidavit of renewal is not filed, but that the mortgage shall cease to be valid as against creditors of the person making the same or subsequent purchasers or mortgagees in good faith. The legislature must have intended by the use of this language to make a wide distinction between the effect of failure to file and the effect of failure to renew. It did this by introducing into the statute the element of good faith on the part of subsequent purchasers or mortgagees. The only effect of a failure to file an affidavit of renewal is to render the chattel mortgage invalid as against subsequent purchasers or mortgagees in good faith or creditors who thereafter acquire liens upon the property. *Ullman v. Duncan,* 78 Wis. 213, 47 N. W. 266.

In *Nix v. Wiswell*, 84 Wis. 334, 340, 54 N. W. 620, it was said:

"This court has, however, from the beginning construed that statute to the effect that, in the absence of such renewal, such mortgage would cease to be valid as against such creditors as should, *after* the expiration of the time for such renewal, seize the property, and such purchasers or mortgagees as should, *after* the expiration of said time, purchase the property or take a mortgage thereon in good faith, but that such renewal was unnecessary to preserve the rights of such mortgagee to the property as against any and all *prior* seizures, transfers, and mortgages."

It is almost universally held that a purchaser or mortgagee in good faith is one who takes without actual or constructive notice of the prior mortgage. 51 A. L. R. 591 and cases cited. It is not contended that the plaintiff was a purchaser or mortgagee in good faith, but that as administratrix of the estate of the deceased, Henry E. Graham, she is the representative of his creditors, and that as such she is in a position to assert the invalidity of the mortgage because of the failure of the mortgagees or their assignees to file the necessary affidavit for renewal. It is settled by a long line of decisions that a creditor who seizes the mortgaged property during the two-year period takes it subject to the mortgage and that his rights are not enlarged by the failure of the mortgagee subsequently to file an affidavit of renewal. By the use of the term "creditor" is meant not merely one to whom the mortgagor owes a debt, but one who has placed himself in a position to assert a claim to the mortgaged property. A creditor can qualify himself to make this assertion only by arming himself with an attachment or execution pursuant to which levy has been made upon the property. Until that time arrives he is in no position to raise the question of the invalidity of the mortgage because until that moment he has no enforceable interest in the property himself. In other words, it is only creditors armed with process by virtue of which the property has been seized

who are in a position to raise the question of whether or not the mortgage is valid or invalid. *Holt v. Crucible Steel Co.* 224 U. S. 262, 32 Sup. Ct. 414, 56 Lawy. Ed. 756; *Detroit Trust Co. v. Pontiac Savings Bank,* 237 U. S. 186, 35 Sup. Ct. 509, 59 Lawy. Ed. 907 ; *Aultman E. & T. Co. v. Young,* 25 S. Dak. 212, 126 N. W. 245. See extended annotation to this case in Ann. Cas. 1912 B, 1106 *et seq.*

Is the administrator of an insolvent estate in the position of a creditor armed with process? If such an administrator occupies such a position it must be because of some reason other than statutory authority. Our statutes contain no provision such as is to be found in the amended Bankruptcy Act of the United States. The only provision of our statutes (sec. 312.13) respecting the power of an administrator to question a transfer made by his decedent authorizes the administrator "to take possession of or sue for or recover all goods, chattels, rights or credits which may have been so fraudulently conveyed by the deceased in his lifetime, whatever may have been the manner of such fraudulent conveyance."

The administrator is authorized to recover property which has been conveyed by the decedent with fraudulent intent. *Koch v. Peters,* 97 Wis. 492, 73 N. W. 25. There is no claim that there is any fraud in this transaction or that any person connected with it had a fraudulent intent in doing what he did. The failure to file the affidavit of renewal was merely an oversight. The mortgage was not withheld from filing by request or collusion of the mortgagor. There is no authority to sell and apply the proceeds of the sale to purposes other than the extinguishment of the mortgage or any of the other acts ordinarily regarded in law as fraudulent.

In *Thomsen v. Cullen,* 196 Wis. 581, 598, 219 N. W. 439, reference is made to *Ryan Drug Co. v. Hvambsahl,* 89 Wis. 61, 61 N. W. 299, to the effect that it had been held that the withholding of a chattel mortgage from filing was

fraudulent even though there was no fraudulent intent. The statement was made there by way of argument and was not intended to overrule *St. Louis Clay Products Co. v. Christopher,* 152 Wis. 603, 140 N. W. 351, which had in express terms overruled *Ryan Drug Co. v. Hvambsahl.* The question of fraud was not involved in *Thomsen v. Cullen,* and by the reference made to *Ryan Drug Co. v. Hvambsahl* it was not intended to reinstate the doctrine of that case.

It is a general rule now well settled that trustees, receivers, administrators, and the like have no greater right to assert the invalidity of transfers than had the person whom they represent unless such right has been expressly conferred upon them. *Stewart v. Platt,* 101 U. S. 731; *York Mfg. Co. v. Cassell,* 201 U. S. 344, 26 Sup. Ct. 481; *Thompson v. Fairbanks,* 196 U. S. 516, 25 Sup. Ct. 306.

The United States supreme court held that under the Bankruptcy Act of 1898 the trustee in bankruptcy took the property of the bankrupt in the same plight and condition the bankrupt himself held it and subject to all the equities impressed upon it in the hands of the bankrupt. Thereafter in the year 1910 the Bankruptcy Act was amended to provide that the trustee should be "deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon," and that as to all property coming into the custody of the bankruptcy court and as to property not in such custody he should "be deemed vested" as of the date of the filing of the bankruptcy petition "with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied." Act of June 25, 1910, § 8, amending Bankruptcy Act, § 47a (2).

In *Eastman v. Parkinson,* 133 Wis. 375, 113 N. W. 649, this court held that a trustee under the original Bankruptcy Act obtained no better claim than the mortgagor had and that the trustee could not successfully impeach the mortgage in

the interest of creditors. Without pursuing the subject farther, it is considered that an administrator of the estate of a decedent, even though the estate be insolvent, stands in the place of the decedent and may not assert the invalidity of any transfer or mortgage untainted by fraud which the decedent himself could not assert. His position is not that of a creditor armed with process, and the mere fact that the statute provides that the property of the decedent shall be applied to the satisfaction of decedent's debts creates no lien upon the property but merely relates to the manner of its distribution.

Certainly the decedent was in no position to assert that the amounts due and owing by him to the mortgagee and the assignees of the mortgagee were not secured by the mortgages in question although the indebtedness therein was not described with particularity. If the mortgage had described an indebtedness less in amount than that which actually existed, a situation would be presented as to the extent of the lien; but here the amount described was greater than the amount actually owing and no such question is presented.

It is further urged that by filing the note secured by the second mortgage for the balance of $425 as evidenced by the note given by the decedent Graham on September 1, 1925, the defendant Knudson Sales Company waived its security. The note as filed had upon it this notation: "This note secured by chattel mortgage No. 19830, on file with city clerk." There is no evidence that the mortgagee had any reason to suppose that the estate was insolvent nor is there any evidence other than the manner of filing of the note that the mortgagee intended to waive the benefit of the security. The mere filing of the claim did not operate as a waiver of the right of the mortgagee to assert his lien. *Kendrick State Bank v. Barnum,* 31 Idaho, 562, 173 Pac. 1144, 2 A. L. R. 1129, 1132, and cases cited.

*By the Court.*—Judgment affirmed.