PIERCE, Appellant, vs. WESTBY STATE BANK and another, Respondents.

*June 4—June 24, 1935.*

*Ralph L. Freeze* of La Farge, for the appellant.

For the respondent Westby State Bank the cause was submitted on the brief of *C. W. Graves* of Viroqua.

NELSON, J.   On June 26, 1931, one Thomas Pierce executed and delivered to the defendant, Westby State Bank, a chattel mortgage covering an undivided one-half interest in thirteen acres of a tobacco crop then growing on his farm, to secure the payment of certain indebtedness which he owed the bank.   That mortgage was duly filed in the office of the register of deeds of Vernon county on June 27, 1931, at 9 o'clock in the forenoon.   At the time that mortgage was given and filed, sec. 241.11, Stats. 1929, in part provided:

"*Affidavit of renewal.*   Every such mortgage shall cease to be valid, as against the creditors of the person making the same or subsequent purchasers or mortgagees in good faith, after the expiration of two years from the filing of the same or a copy thereof, unless within thirty days next preceding the expiration of the two years the mortgagee, his agent or attorney shall make and annex to the instrument or copy on file in the office of the register of deeds, . . . an affidavit," etc.

The bank did not file an affidavit of renewal within the two years from the filing of its chattel mortgage as provided by sec. 241.11. On June 27, 1933, after the expiration of two years from the filing of the defendant bank's mortgage, the said Thomas Pierce and his wife executed and delivered to the plaintiff a chattel mortgage which covered an undivided two-thirds interest in certain tobacco then stored in a tobacco warehouse at Westby, Wisconsin, and other property, which tobacco was concededly the 1931 crop grown on the thirteen acres. That mortgage was filed in the office of the register of deeds of Vernon county on June 27, 1933, at 2 o'clock in the afternoon.

In 1931, the legislature enacted ch. 291 which amended sec. 241.11, effective January 1, 1932, to read:

"Every such mortgage shall cease to be valid, as against the creditors of the person making the same or subsequent purchasers or mortgagees in good faith, after the expiration of *three* years from the filing of the same or a copy thereof. The validity of the filing may in each case be extended for successive additional periods of one year from the date of filing the affidavit, by filing with the register of deeds an affidavit within thirty days next preceding the expiration of each period, setting forth the interest," etc.

At all of the times mentioned, and for many years prior thereto, the following statute was in force and effect:

Sec. 370.06 (formerly numbered 4976) "In any case when a limitation or period of time prescribed in any act which shall be repealed for the acquiring of any right, or barring of any remedy, or for any other purpose shall have begun to run before such repeal and the repealing act shall provide any limitation or period of time for such purpose, such latter limitation or period shall apply only to such rights or remedies as shall accrue subsequently to the time when the repealing act shall take effect, and the act repealed shall be held to continue in force and be operative to determine all such limitations and periods of time which shall have

previously begun to run unless such repealing act shall otherwise expressly provide."

Ch. 291, Laws of 1931, did not expressly provide that said chapter should apply to any limitations or periods of time which had previously begun to run under sec. 241.11 prior to the enactment of ch. 291.

The plaintiff contends that since the two-year period in which the bank was required by the then existing law to file its affidavit of renewal had commenced to run, that ch. 291, not expressly otherwise providing, did not operate to extend the time in which the bank could effectively file an affidavit of renewal. In our opinion plaintiff's contention is sound. Sec. 370.06 (formerly sec. 4976) was enacted in 1878. It has been in force and effect continuously since its enactment. In enacting ch. 291, Laws of 1931, it must be presumed that the legislature had knowledge of such statute and intended that it should be given effect. In *Lotten v. O'Brien,* 146 Wis. 258, 131 N. W. 361, there was considered an amendment to sec. 4222 (5), which required notice of injury to be served within one year, which amendment extended the time to two years. (Ch. 151, Laws of 1909.) It was there said:

"But we believe that in such case sec. 4976, Stats. (1898), which applies to all statutes, steps in and applies a rule that, the limitation of one year having begun to run when the act of 1909 went into effect and the latter act providing a new period of limitation, the former limitation statute is continued in effect as to such former acts."

Sec. 370.06 was recently given force and effect in *Thom v. Sensenbrenner,* 211 Wis. 208, 247 N. W. 870, and *Augustine v. Congregation of the Holy Rosary,* 213 Wis. 517, 252 N. W. 271. The *Thom Case* involved ch. 24, Laws of 1929, which amended secs. 4219 and 4222, Stats. 1923 (renumbered secs. 330.15 and 330.19). The *Augustine*

*Case* involved an amendment of sec. 289.06, Stats. 1931, by ch. 75, Laws of 1933, which amendment enlarged the time for filing a complaint to enforce a lien from one year to two years. In both of those cases it was held that the acts repealed continued in force and were operative to determine all such limitations and periods of time as had previously begun to run because such repealing acts did not otherwise expressly provide. In our opinion those cases rule the present controversy and uphold the plaintiff's contention. The trial court apparently did not consider sec. 370.06 or any of the cases in which it was applied. It was the duty of the bank, if it desired to preserve the validity of its mortgage as against creditors of the mortgagor or subsequent purchasers or mortgagees in good faith, to make and annex to its chattel mortgage or copy on file, within two years from the filing of the same, an affidavit as required by sec. 241.11, Stats. 1929. The plaintiff's mortgage was executed and delivered to him after the expiration of the two years from the filing of the bank's mortgage. The bank's mortgage therefore ceased to be valid as against the plaintiff, who took his mortgage after the expiration of the two years, if he was a mortgagee in good faith. *Lowe v. Wing,* 56 Wis. 31, 13 N. W. 892; *W. W. Kimball Co. v. Huntington,* 80 Wis. 270, 50 N. W. 177; *Nix v. Wiswell,* 84 Wis. 334, 54 N. W. 620; *Graham v. Perry,* 200 Wis. 211, 228 N. W. 135. In *Nix v. Wiswell, supra,* it was said (p. 340) :

"This court has, however, from the beginning construed that statute to the effect that, in the absence of such renewal, such mortgage would cease to be valid as against such creditors as should, *after* the expiration of the time for such renewal, seize the property, and such purchasers or mortgagees as should, *after* the expiration of said time, purchase the property or take a mortgage thereon in good faith, but that such renewal was unnecessary to preserve the rights of such mortgagee to the property as against any and all *prior* seizures, transfers, and mortgages."

When the two-year period expired without an affidavit of renewal being attached to the mortgage or copy on file, it ceased to give constructive notice of its existence and ceased to be valid as against a subsequent purchaser or mortgagee in good faith. It is generally held that one is not a mortgagee in good faith who takes a mortgage after the expiration of the period in which the filing of the mortgage gives constructive notice, if such person takes with actual notice of a prior mortgage. *McCormack v. Venable,* 58 Hun, 608, 12 N. Y. Supp. 152; *Hill v. Beebe,* 13 N. Y. 556; *Huber Mfg. Co. v. Sweny,* 57 Ohio St. 169, 48 N. E. 879; *Salmon v. Norris,* 82 App. Div. 362, 81 N. Y. Supp. 892; *Graham v. Perry, supra.* The writer of a note found in 51 A. L. R. p. 597, summarizes the law thus:

"The weight of authority is to the effect that a subsequent mortgagee who takes his security after the expiration of the renewal period, but with actual notice of the prior mortgage, cannot avail himself of the mortgagee's failure to file the renewal affidavit."

The only other question therefore that requires consideration is whether the plaintiff was a mortgagee in good faith. That the plaintiff's mortgage was given to secure a valid and existing debt then owing the plaintiff by Thomas Pierce, the mortgagor, there can be no doubt. There is nothing in the record tending to show that the plaintiff had actual knowledge of the bank's mortgage. It is quite apparent that Thomas Pierce, the mortgagor, was keeping track of the expiration date of the bank's mortgage, so that in case the bank failed to file an affidavit of renewal he would be in a position to secure a *bona fide* indebtedness which he owed his son, the plaintiff. The trial court, in its decision, stated:

"I am of the opinion that the findings of fact in this case should be, of course, that the plaintiff had, at the time of the commencement of this action, a *bona fide* mortgage on this property."

The court, however, was of the opinion that ch. 291, Laws of 1931, effectively extended the period from two years to three years in which an affidavit of renewal might be filed. The findings of fact and conclusions of law thereafter filed contained no finding that the plaintiff was a mortgagee in good faith. The case was disposed of on the theory that the bank's mortgage had not ceased to be valid as against subsequent purchasers and mortgagees in good faith at the time the plaintiff took his mortgage. We find no testimony in the record upon which a finding could be based that the plaintiff had actual knowledge of the bank's mortgage.

The bank further contends that, regardless of the validity of its mortgage as against the plaintiff, and regardless of the plaintiff's right to the possession of the tobacco under its mortgage, provision ought to be made to pay the bank the sum of $127.70 paid by it to the owners of the tobacco warehouse who sorted, sized, and cased the tobacco covered by the mortgages. Had the bank not paid the charges and such claim were made by the owners of the warehouse, a different question would be presented. Here the bank paid the amount of the charges expecting to be reimbursed by Thomas Pierce, mortgagor, when the tobacco was sold. We see no way to give the bank a claim on the tobacco which will be prior to the plaintiff's mortgage.

*By the Court.*—Judgment reversed, with directions to enter judgment for the plaintiff.