## QUEENAN v. WIKER et al. (JENS-MARIE HOTEL CO. et al., Interveners).

### No. 1868.

District Court, W. D. Oklahoma.

Nov. 8, 1937.

R. O. Wilson, of Ponca City, Okl., for plaintiff.

C. L. Armstrong, of Ponca City, Okl., for defendant J. W. Wiker.

A. N. Murphey, of Oklahoma City, Okl., for defendant First Nat. Bank & Trust Co. of Oklahoma City.

J. F. Murray and L. A. Maris, both of Ponca City, Okl., for intervener Jens-Marie Hotel Company.

Neal Sullivan, of Newkirk, Okl., for intervening general creditors.

VAUGHT, District Judge.

The plaintiff filed his petition in this case on June 3, 1936, seeking to foreclose a chattel mortgage executed on the 19th day of October, 1931, by J. W. Wiker to C. O. Johnson in the sum of $19,715, bearing interest at the rate of 8 per cent. and providing for attorneys' fees, covering certain equipment and furnishings in the Jens-Marie Hotel at Ponca City, Oklahoma.

The petition alleged that C. O. Johnson executed his note in favor of the First National Bank & Trust Company at Oklahoma City in the sum of $2,300, and to secure the payment of said note, the said C. O. Johnson assigned the note and mortgage executed to him by J. W. Wiker, to the said First National Bank & Trust Company at Oklahoma City; that thereafter the said C. O. Johnson assigned, subject to the indebtedness of the First National Bank & Trust Company, the said Wiker note and mortgage to the plaintiff, Jerome G. Queenan, as receiver of the First National Bank in Ponca City.

On the 1st day of July, 1936, the owners of the Jens-Marie Hotel Company, a partnership, filed their petition of intervention alleging that on the 10th day of January, 1923, said interveners, as owners of said hotel property, entered into a lease contract with the defendant J. W. Wiker by the terms of which they leased the hotel building to the said Wiker for a period of ten years for a stipulated rental, and that the lease contract provided for a lien upon all of the equipment to be placed in said hotel building to secure the payment of the rents payable thereunder.

The plaintiff contended that his mortgage was a first and prior lien in view of the fact that the said lease contract was not filed as a chattel mortgage in Kay county, Oklahoma, and, therefore, was not notice to the public that said lease contract contained a mortgage clause or a clause giving the lessors a lien upon the property of the lessee to secure the payment of the rents.

On the 31st day of October, 1931, the lessors filed their lease contract as a chattel mortgage in the office of the county clerk of Kay county, Oklahoma.

On the 28th of August, 1934, W. L. Hert, for and on behalf of the First National Bank & Trust Company, Oklahoma City, being in possession by an assignment of the note and mortgage executed

by J. W. Wiker to C. O. Johnson, filed the statutory renewal affidavit. The three-year period, however, expired on the 19th of October, 1934.

Section 11282, Oklahoma Statutes 1931, 46 Okl.St.Ann. § 61, provides: "A mortgage of personal property ceases to be valid as against creditors of the mortgagor, and subsequent purchasers or incumbrancers in good faith after the expiration of three years from the filing thereof, unless within thirty days next preceding the expiration of such term, a copy of the mortgage and a statement of the amount of existing debt for which the mortgagee or his assignee, claims a lien, sworn to and subscribed by him, his agent or attorney, are filed anew in the office of the register of deeds, in the county in which the mortgagor then resides, and in like manner the mortgage and statement of debt must be again filed every three years, or it ceases to be valid as against the parties above mentioned."

It is thus seen that the renewal affidavit was filed fifty-two days prior to the expiration of the three-year period instead of within thirty days immediately preceding the expiration of said period. The renewal affidavit of the lessors was not filed until approximately thirty days after the expiration of the thirty-day period. Thereafter, on the 18th of September, 1937, this court adjudicated the rights of the owners of the hotel and of the plaintiff in this case, as to their respective interests in the equipment in said hotel, based upon their respective mortgages.

On September 18, 1937, W. A. Duroy, O. C. Hatfield, and J. J. Donahoe & Company, respectively, filed their petitions of intervention in this case, alleging that because the Johnson mortgage was filed fifty-two days prior to the expiration of the three-year period and not within the thirty-day period immediately preceding the expiration of said three years, as provided by statute, and that the lessors and owners of the hotel company failed to file their renewal affidavit until more than thirty days after the expiration of the said three-year period, said mortgage and lien under the lease contract were both void as against the general creditors, and asked that the rights of the general creditors be determined and that they be decreed to have the same rights as creditors, to the assets of J. W. Wiker, as the plaintiff and the lessors.

In the meantime and after the filing of said interventions by the general creditors, the hotel company purchased, by assignment, all of the interest in the Johnson mortgage held by the plaintiff and the First National Bank & Trust Company of Oklahoma City, and is, therefore, the owner of both the mortgage and the lease and all of the rights thereunder.

The hotel company has moved to strike the petitions of intervention of the general creditors for the reason that this being a proceeding to foreclose a mortgage, said general creditors have no right to intervene except on the theory that they have some lien or claim upon the property itself and this matter comes on for hearing upon the motion of the hotel company to strike said petitions of intervention from the files in this case.

The rights of the intervening general creditors and of the plaintiff and the lessors must be determined as of the date that this suit was filed. In other words, this suit being an action to foreclose the mortgage of the plaintiff and the lien of the hotel company, the rights of all of the parties are fixed as of the date the suit was filed. It is contended by the interveners that they have had no opportunity, since the filing of this suit, to avail themselves of such a process as would ripen their claims into liens as judgment creditors. It is not necessary that this should have been done after the filing of this suit. Ample opportunity existed from October, 1934, to June 1, 1936, the date this suit was filed.

Section 11282, Okl.Stats.1931, 46 Okl. St.Ann. § 61, supra, has not been definitely construed by the Supreme Court of Oklahoma. However, in the case of In re Terrell, 246 F. 743, 748, the Eighth Circuit Court of Appeals did construe the statute, in a case arising in this particular district, in which the court said: "The ultimate conclusion of the court is that a chattel mortgage in Oklahoma, though not recorded or possession of the property not taken by the mortgagee when made, yet if possession is taken by him, or the mortgage is filed for record prior to the attaching of liens of other parties, the filing of the mortgage for record has the effect of taking possession, and the rights of the mortgagee will be protected from the date of the filing of the same for record. This, it will be observed, is the rule as to chattel mortgages in Oklahoma; but, as we have

before seen, contracts for the conditional sale of personal property in that state and generally, in which the legal title and right of possession are reserved in the vendor until the purchase price is paid though not recorded, stand upon a different footing and are valid as between the parties and as against creditors of the vendee who have acquired no lien thereon."

It is admitted that the general creditors, who have intervened in this case, had taken no action whatever to reduce their claims to judgment or to procure a mortgage on the property to secure their claims, prior to the filing of these petitions of intervention.

It is also admitted, and appears from the record, that this suit to foreclose had been instituted more than a year prior to the filing of these petitions of intervention.

The first question is whether or not the general creditors have a right to file petitions of intervention—whether they have such standing as to entitle them to question the validity of the mortgage and liens of the hotel company which are now in process of foreclosure.

In Ruggles v. Cannedy, 127 Cal. 290, 53 P. 911, 915, 59 P. 827, 46 L.R.A. 371, a California case, the court said: "Of course, it is true in general that a creditor at large of the mortgagor cannot set aside a mortgage for lack of recordation, any more than can such a creditor set aside a sale void for want of immediate delivery. He must come first with his judgment lien, execution levy, attachment, or some other process or right by which he has acquired a specific interest in or claim upon the particular property."

In Wolpert v. Gripton, 213 Cal. 474, 2 P.2d 767, 769, the same court said: "Only a creditor who has acquired a lien upon the mortgaged property by virtue of some legal proceeding, or who is armed with some process authorizing seizure of the property, can question its compliance with the formalities prescribed by the Code."

In Hanson v. Blum, 53 N.D. 526, 207 N.W. 144, the Supreme Court of North Dakota held:

"A 'creditor,' within the meaning of that term as used in section 6762, C.L. 1913, is one who, without notice that the debt secured by an unrenewed chattel mortgage is unpaid, subsequently extends credit or alters his position as to his debtor to his detriment. * * *

"A creditor as to whom a mortgage is void because not renewed as required by section 6762 cannot question the validity of such mortgage, unless and until he has imposed a lien for his debt upon the mortgaged property, but whether such lien is imposed involuntarily as to the debtor, by seizure under execution or attachment, or voluntarily by contract, is immaterial."

In Hollenbeck v. Louden, 35 S.D. 320, 152 N.W. 116, the Supreme Court of South Dakota held: "Under Civ.Code, § 2085, providing that a mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers in good faith unless it be filed in the office of the register of deeds, plaintiff, who delayed in filing his mortgage, took priority over those creditors whose debts were incurred before the mortgage was given, and who did not in the interim acquire any lien, but his rights were subject to those of subsequent creditors who allowed the mortgagor to incur indebtedness without knowledge that his property was incumbered."

In Sample v. Getman-McDonnell-Summers Drug Co., 14 F.2d 170, the District Court for the Northern District of Oklahoma, in construing the statute of Oklahoma, held: "Under Comp.St.Okl.1921, § 7650 [46 Okl.St.Ann. § 57], an unrecorded chattel mortgage is valid between the parties and as to creditors of mortgagor who have not acquired liens on the property, and the effect of taking possession by the mortgagee, with mortgagor's consent, is the same as though a new mortgage was executed and recorded on that date."

In Heal v. Evans Creek Coal & Coke Co., 71 Wash. 225, 128 P. 211, 213, the Supreme Court of Washington said: "Whether properly recorded or not, the mortgage was valid as between the mortgagor and mortgagee; and it is only creditors who have acquired some form of lien upon the mortgaged property that can question the right of the mortgagee to foreclose against such mortgaged property. Jones on Chattle Mortgages (3d Ed.) §§ 238, 245."

In Feary v. Cummings, 41 Mich. 376, 1 N.W. 946, 951, the Supreme Court of Michigan said: "Still no one as creditor at large can question the mortgage. He

can only do that by means of some process or proceeding against the property."

And in Scott v. Chambers, 62 Mich. 532, 29 N.W. 94, 96, the court said: "It is the settled law of this state that creditors cannot attach the interest of third parties, alleged to have been obtained by fraud, until they have obtained a standing by legal proceedings; and, so far as these bonds are concerned, they could only be reached by judgment creditors."

In Krolik v. Root, 63 Mich. 562, 30 N.W. 339, 341, the same court said: "The complainants in this case never obtained a lien upon the property in question, or any part thereof, so far as appears upon this record. They are not in a situation to attack the validity of the defendants' last mortgage without such lien obtained in some manner."

The interveners rely largely upon the construction that has been placed upon the New York statutes by the courts of that state and the federal courts of that circuit. However, in Thompson v. Van Vechten, 27 N.Y. 568, the New York court held: "The mortgage cannot be legally questioned until the creditor clothes himself with a judgment and execution, or with some legal process against his property; for creditors cannot interfere with the property of their debtor without process."

In the case of In re New York Economical Printing Co., 110 F. 514, 517, the Second Circuit Court of Appeals, in construing the New York statute in a case in which a copy of the mortgage was filed but eight days too late, said: "It remains to consider whether the trustee can take advantage of the noncompliance with the statute. It has always been held by the courts of New York that only such creditors can take advantage of it as are armed with some legal process authorizing the seizure of the mortgaged property, and are thereby in a position to enforce a lien upon it [citing cases.]"

In R.C.L. vol. 5, 414, it is said: "A defect in the record of a mortgage or a failure to record it cannot be attacked by a mere general creditor who has not some right to or interest in or lien on the property itself. Before he may contest its validity his debt must be fastened upon the debtor's property covered by the mortgage. * * *"

In C.J. 11, 543, § 233, it is said: "* * * Failure to renew or refile as required is only available to those persons designated by, or within the contemplation of, the statute, and does not affect the validity of the instrument as between the parties; nor, according to the generally accepted rule, as toward mere general creditors, * * *."

In Graham v. Perry, 200 Wis. 211, 228 N.W. 135, 137, 68 A.L.R. 267, the Supreme Court of Wisconsin said: "It is settled by a long line of decisions that a creditor who seizes the mortgaged property during the two-year period takes it subject to the mortgage, and that his rights are not enlarged by the failure of the mortgagee subsequently to file an affidavit of renewal. By the use of the term 'creditor' is meant, not merely one to whom the mortgagor owes a debt, but one who has placed himself in a position to assert a claim to the mortgaged property. A creditor can qualify himself to make this assertion only by arming himself with an attachment or execution pursuant to which levy has been made upon the property. Until that time arrives he is in no position to raise the question of the invalidity of the mortgage, because until that moment he has no enforceable interest in the property himself. In other words, it is only creditors armed with process by virtue of which the property has been seized who are in a position to raise the question of whether or not the mortgage is valid or invalid."

The same position was asserted by the Supreme Court of Utah in Commercial Security Bank of Ogden v. Chimes Press, 88 Utah 148, 42 P.2d 990.

The court is not unmindful of the strong line of authorities submitted in the brief of the intervening general creditors and particularly the New York rule, but even the courts of New York are in disagreement on this subject. However, the case of In re Terrell, supra, decided by the Eighth Circuit Court of Appeals, was decided when Oklahoma was a part of the Eighth Circuit and in a case from this particular district.

Assuming that under the language of the statute, the mortgage and lease would be void as to the general creditors, yet it is admitted by all of the courts that they would not be void as between the mortgagor and the mortgagee and therefore they would have the status of unrecorded mortgages, and if such be the case, they come squarely within the Terrell Case.

Having held in this case that the lien of the hotel owners and the mortgage of the plaintiff are valid as between mortgagor and mortgagee and it being admitted that both said mortgage and said lien were in process of foreclosure at the time the interventions of the general creditors were filed, and it appearing further that the general creditors had taken no steps whatever to reduce their claims to judgment nor had they secured any mortgage upon the property in question, the court has no difficulty in holding that these general creditors cannot be heard in this case to question the lien rights of the hotel company and the plaintiff.

The intervening petitions of said general creditors, to wit, W. A. Duroy, O. C. Hatfield, and J. J. Donahoe & Company, should be stricken, and the motion of the hotel company to strike said petitions of intervention is sustained. An exception is allowed. A form of decree may be submitted consistent with this opinion.