PUTTERMAN and another, Respondents, vs. GOLDMAN, Appellant.

*October 12—November 7, 1928.*

234

The cause was submitted for the appellant on the brief of *O. L. O'Boyle* of Milwaukee, and for the respondents on that of *Louis R. Potter* of Milwaukee.

DOERFLER, J. The action is one sounding in tort, for fraud and deceit. The plaintiffs, on the 17th day of August, 1925, and for some time prior thereto, were copartners as commission merchants in the city of Milwaukee. Defendant's brother, Morris Goldman, was also in the commission business in said city, and the evidence discloses that for some time prior to August 17, 1925, the defendant, Max Goldman, who was a fruit peddler, purchased from time to time for his brother, and for himself in the name of his brother, various quantities of fruit, which were in all cases, excepting where the fruit was purchased for the defendant for cash, charged to Morris Goldman. Max Goldman several years prior to the date last aforesaid had gone through bankruptcy, and no credit was extended to him anywhere by fruit commission houses in said city, excepting only such as was granted him by his brother, Morris; and while the financial standing of Morris on the 17th day of August, 1925, apparently was good, he in reality was "on the rocks," for within a few days afterwards, viz. on the 20th day of August, 1925, a meeting of his creditors was called at his request, by the representatives of the Fruit Exchange of Milwaukee, for the purpose of effecting, if possible, a composition settlement agreement. This meeting was held on the date aforesaid, but no composition was effected, and thereafter Morris was forced into involuntary bankruptcy.

On the 17th day of August, 1925, the defendant appeared at the place of business of the plaintiffs, where he negotiated with one Joseph Putterman, one of the plaintiffs' firm, for

the purchase of 125 bushels of peaches at $3.25 per bushel. Thereafter, the testimony of the plaintiffs' and defendant's witnesses is in sharp conflict, it appearing from the testimony of the plaintiffs that the parties to the transaction agreed that the deal was to be on a strictly cash basis. The defendant denied that the deal was to be for cash, and insisted that he was following his usual practice of purchasing goods upon his brother's name, who had authorized him to do so, and that the plaintiffs would have to look to Morris Goldman for their pay.

The learned circuit judge in his opinion made the statement that there was a good deal of lying in the case, and a careful reading of the record convinces us that the judge was warranted in making such statement, and that the well-founded suspicions are not confined to one side of the cause. In such a situation, the acts of the parties and the surrounding circumstances are oftentimes a helpful aid in determining where the truth lies.

It is an undisputed fact that the peaches were delivered at the place of business of Morris Goldman, were deposited upon his sidewalk, where they were left for display purposes, and were checked in in accordance with the ordinary custom by Morris Goldman's checker. While Morris Putterman (the son of Joseph Putterman) testified that after the peaches were delivered he presented cash sales slips to the defendant, nevertheless it is undisputed that these slips were changed to charge slips, were handed in to plaintiffs' office, and then entered upon the plaintiffs' books as a charge against the defendant. It is also undisputed that after the alleged presentation of the cash sales slips, an invoice of the goods was made out to Morris Goldman and left in the latter's office. Also, it is undisputed in the case that Morris Goldman out of the 125 bushels of peaches sold seventy-five bushels thereof to the defendant Max, and that Max was charged for the amount of these peaches; and that after the appointment of a trustee in bankruptcy he paid the amount

of such purchase in full. Further, it is undisputed that when Morris Goldman went into involuntary bankruptcy his books disclosed that his brother Max owed him about $1,000, which included the price of the seventy-five bushels of peaches. Shortly before this transaction occurred, Morris Goldman sold to the plaintiffs, prunes for the sum of $52.50, and this amount appeared as a charge upon the account of the plaintiffs in the books of Morris Goldman. It further appears that on the day when the creditors' meeting was called, Joseph Putterman appeared in the office of Morris Goldman, and, in accordance with the testimony of Belle Goldman, wife of Morris Goldman, made the statement that if he had known that a composition meeting would be called he would have ordered prunes sufficient to cover the amount for the peaches.

In addition to all the other facts and circumstances above alluded to, it must be remembered that the defendant, Max Goldman, had no credit whatsoever among the commission men doing business on Commission Row in the city of Milwaukee; that most of the goods used by him were purchased directly from his brother, Morris, and charged; that he purchased both for himself and for his brother, and that in either event (excepting in rare cases where cash was paid) the purchases were made on the credit of Morris, who had authorized his brother Max to use his name.

In order to establish this cause of action in law it must appear by clear and satisfactory evidence that there was no intention to pay for the goods at the time the purchase was made. 12 Ruling Case Law, 263; *Hart v. Moulton,* 104 Wis. 349, 80 N. W. 599. This being a tort based on fraud, the fraud must be proven by clear and satisfactory evidence to a reasonable certainty. In our opinion this requirement is not complied with, and the judgment must therefore be reversed, with directions to dismiss plaintiffs' complaint, with costs.

*By the Court.*—It is so ordered.