MASSEY, Appellant, vs. RICHMOND and others, Respondents.
BANK OF BURLINGTON, Plaintiff and Respondent, vs. RICH-
    MOND and others, Defendants, MASSEY, Defendant and
    Appellant.
TAGGART, Administrator, and another, Plaintiffs and Re-
    spondents, vs. BANK of BURLINGTON, imp., Defendant
    and Respondent, MASSEY, Defendant and Appellant.

*April 7—May 10, 1932.*

242

244

For the appellant there was a brief by *Charles E. Wilson* of Elkhorn, attorney, and *Deming, Jarrett & Mulfinger* of Chicago of counsel, and oral argument by *Mr. Wilson* and *Mr. C. W. Mulfinger.*

For the respondent Elfstrom there was a brief by *Wengert & Moeller,* attorneys, and *Alfred H. Handrich* of counsel, all of Milwaukee, and oral argument by *Eugene L. Wengert.*

*Charles E. Lyon* òf Elkhorn and *Charles D. Rohr* of Burlington, for respondent Bank of Burlington.

For the respondents Taggart, general administrator, and Zook, special administrator, there was a brief by *Godfrey, Arnold & Wheeler* of Elkhorn, and oral argument by *A. L. Godfrey.*

ROSENBERRY, C. J.  Before entering upon a consideration of the questions presented upon these appeals, reference should be made to a few fundamental principles of law. First, in order to entitle a person seeking to set aside a conveyance on the ground of fraud, proof of the wrong should be clear, satisfactory, and convincing. *Richards v. Millard,* 146 Wis. 552, 131 N. W. 365; *De Groot v. Veldboom,* 167 Wis. 107, 166 N. W. 662; *Putterman v. Goldman,* 197 Wis. 233, 221 N. W. 650.

The evidence of fraudulent conduct on the part of Massey consists almost entirely of insinuations and charges, and we search the record in vain for any fact established which charges Massey with bad faith or in collaborating in any way to defraud or defeat the creditors of Hultquist. The mere fact that the transactions were made through dummies in order that the interest which the parties had in the land might be made to take a more marketable form or otherwise serve the convenience of the parties, is not significant in the absence of other facts which support an inference that the transaction was entered into for a fraudulent purpose. There is not the slightest evidence in the record that when Hultquist gave the deed to Massey in 1922 he was so involved financially that it could have been to his advantage to transfer his property. Such testimony as there is in the case indicates that Massey furnished all of the money for the deal, that he held title to the property as security, and that he was entitled to the return of his investment and one-half of the profits. From the evidence it appears that the transaction was closed in June, 1928, at the urgent solicitation of Massey, because Hultquist placed such an extravagant value

upon the property that Massey believed it would not be sold and he was desirous of realizing upon his interest in it, and the property was transferred to Richmond and a mortgage executed and delivered to Massey as collateral to his note for $17,122.58 as a part of a single transaction. There is no finding that Massey acted with fraudulent intent or purpose to aid Hultquist in defeating his creditors and there is no evidence in the record which would support such a finding if made. Where it appears that a person heavily indebted has transferred his property upon an inadequate consideration or constituted a third person a trustee for his benefit, the inference that it was done with fraudulent intent is readily drawn. In this case the facts upon which such an inference must rest are not established by the evidence.

There is no evidence in the record that Miss Elfstrom relied upon any interest which Hultquist had in the property. She apparently relied upon a $30,000 mortgage or trust deed upon the property located in Indiana, in which she supposed Hultquist had an interest. There is not a scintilla of evidence in the record that Massey knew anything about Hultquist's indebtedness to Miss Elfstrom, nor is there any circumstance in the record which would put him upon inquiry in regard thereto. The 1928 transaction as between Massey and Hultquist seems to have been upon a full, fair, and adequate consideration. Under such circumstances, in order to support a finding that the transaction is void as to creditors there must be proof that the grantee participated in the fraudulent intent. *Evans v. Rugee,* 57 Wis. 623, 16 N. W. 49; *Carey v. Dyer,* 97 Wis. 554, 73 N. W. 29; *Farmers Exchange Bank v. Oneida Mfg. Co.* 202 Wis. 266, 232 N. W. 536.

So far as V. P. Richmond, who acted as dummy in the 1928 transaction, is concerned, it appears that he has never denied or in any way attempted to conceal the fact that he had no interest in the transaction, nor is there any evidence

of any inquiry ever made by the creditors of Hultquist at any time, either of Massey or Richmond, as to any interest which Hultquist had in the Booth Lake property. That Hultquist did not consider himself insolvent is indicated by the fact that in his opinion he had $40,000 equity in the Booth Lake property. He apparently also believed, or at least led Miss Elfstrom to believe, that he had a $30,000 equity in the Indiana property.

While the administrator's action is brought under sec. 312.13, Stats., and the creditors' action under sec. 312.16, in each of these cases the conveyance is subject to be set aside only if it was fraudulent when made by the decedent because it was done with intent to defeat or defraud his creditors. *Sawyer v. Metters,* 133 Wis. 350, 113 N. W. 682; *Baldwin v. Frisbie,* 163 Wis. 26, 157 N. W. 526.

An attempt was made upon the oral argument and in briefs on appeal to establish payment by Hultquist of all or a part of the sums owing by Hultquist to Massey. Here again the evidence related to fugitive transactions, were not connected except by insinuations with the Booth Lake transaction, and it appeared as an undisputed fact that Massey and Hultquist had had many business dealings. Mere production of a check drawn by one person in favor of another does not prove payment upon account of a particular obligation. This is especially true where there are many transactions relating to different properties involved. There is nothing to indicate on the part of Massey any overreaching in his dealings with Hultquist. On the contrary, he seems to have been very reasonable and only pressed a closing of the transaction because he considered Hultquist's judgment in regard to the value of the property unsound. He having had his money in the deal for six years wished to close it out. Hultquist was not coerced in any way either in respect to closing the deal or in respect to the amount owing from

Hultquist to Massey, the settlement having been made in the presence of Mr. Richmond, who testified to the whole transaction. While it is true some of the conveyances were made in 1927, preceding the entry of the judgment in favor of the Burlington Bank, this arouses nothing more than a suspicion. Certainly Hultquist must have been of the opinion that the property covered by the bank's mortgage was worth more than the amount of the mortgage or he would not have purchased an equity and assumed and agreed to pay the mortgage. Transactions made in the ordinary course of business upon which no evidence of fraud, overreaching, or wrongdoing is stamped, are not to be lightly set aside. The burden of proof is upon the parties attacking the conveyance to show by clear and satisfactory evidence that the conveyance was fraudulent and intended to hinder, delay, and defraud creditors. If we should assume that the finding of the court in regard to the 1928 transaction between Massey and Hultquist could be sustained, yet there is nothing to divest Massey of his interest in the deal under the transaction of 1922. As to that transaction there is not a thing in the record that impeaches it in the slightest degree. Even if some fraudulent purpose had been proven with respect to the 1928 transaction, it could not reach back six years and affect the transaction in 1922, which was apparently open and above board with respect to every one, and upon that basis the result would be substantially the same.

It appears that a stipulation was entered into by the parties to the litigation with the exception of Miss Elfstrom. After the making of the stipulation she applied to the court, was interpleaded, made a party to the actions, and moved the court for a judgment in accordance with the findings of fact and conclusions of law theretofore made by the court. The court did not in terms set aside the stipulation, but in legal effect it did so because the judgment entered was not in

accordance with the stipulation to which Miss Elfstrom was not a party. A stipulation is nothing but an agreement between the parties to a proceeding in a court. We cannot restore the agreement by judgment of this court and so in effect make a contract which will conclude not only the parties to the stipulation but Miss Elfstrom, who is a party to the action and who did not consent to it. If the parties are desirous of carrying out their original stipulation, that is a matter for them to determine and not for the court to decide.

There has been no attack upon the finding of the court with respect to the property not included in the Massey mortgage and upon which the Burlington Bank claims its judgment is a lien. Therefore the judgment of the trial court in that respect should be and is affirmed. In all other respects the judgments in the several actions appealed from should be reversed.

*By the Court.*—The mandate in the several cases will be as follows: In the foreclosure action (No. 134) the judgment is reversed and the cause remanded with directions to enter judgment of foreclosure and dismissing the counterclaim of the defendants, plaintiff to have his costs.

In the creditors' action (No. 135) the judgment appealed from is reversed and cause remanded with directions to dismiss the complaint as to the defendant Eugene Massey. Judgment should be entered in the court below establishing the lien of the Bank of Burlington upon property not included in the Massey mortgage.

In the administrator's action (No. 136) the judgment appealed from is reversed and the cause remanded with directions to dismiss the plaintiff's complaint.

In this court Massey is to tax one bill of costs in the foreclosure action. No costs are to be taxed in the other actions except the clerk's fees and $25 attorney fees.