KERBET, by Guardian *ad litem,* and another, Appellants, vs. BEHLING and others, Respondents.

*November 3—December 1, 1953.*

For the appellants there was a brief by *Harry R. Glick,* attorney, and *Gold & McCann* of counsel, all of Milwaukee, and oral argument by *Mr. Ray T. McCann* and *Mr. Glick.*

For the respondents there was a brief by *Wilbershide & Wilbershide* of Racine, and oral argument by *J. C. Wilbershide.*

GEHL, J. Plaintiffs appeal and contend that the trial court overlooked the rule that circumstances as were shown in this case call for close scrutiny and clear explanation of the transaction. *Fernhaber v. Cream City Cartage Co.* 176 Wis. 75, 186 N. W. 175. The testimony and the circumstances upon which plaintiffs rely in support of their contention that the conveyance and transfer were made to defraud them as creditors are these: Close family relationship existed between the families; no cash was paid at the time of the delivery of the deed, no examination of the title was made; no closing statement was made; no computation of or reference was made to the amount due on the mortgage of the Equitable Life Assurance Society; neither of the grantees knew whether the existing mortgage was in default; there was no discussion about real-estate taxes and how they should be prorated; neither grantee knew whether any taxes were delinquent; nothing was said about fire insurance premiums; the $8,800 mortgage was not recorded; it does not appear that a note was executed to accompany the $8,800 mortgage.

Glenn testified that when the $8,800 mortgage was executed it was handed to him and he kept it in his possession in a safety-deposit box to which Oscar had no access; that Oscar never had the mortgage in his possession; at his adverse examination Glenn testified that he paid $2,700 for the personal property and did not know why the bill of sale

recited a consideration of $2,300, and in explanation of the discrepancy he testified at the trial that he had previously paid $400 toward the purchase price of the personal property.

Plaintiffs lay particular emphasis upon the testimony regarding payment of the $8,800 mortgage. They testified that they paid it in cash, $6,000 of which had been loaned to them by a sister. There are a number of contradictions in the testimony of the sister and the brothers respecting the time, place, and manner of delivery of the money to the brothers and the amount handed to each. It may be conceded that the nature of their testimony is such as to suggest that it should not be believed. We may not, however, on that account say that none of their testimony should be believed, or that the trial court's finding should be disturbed.

Oscar's disappearance from the community about ten months after the $8,800 mortgage is claimed to have been paid and the fact that he has not been heard from since, are circumstances relied upon by plaintiffs as evidence of a purpose to defraud plaintiffs.

The defendants in answer to and in explanation of the circumstances relied upon by plaintiffs call attention to the following: That the court was compelled to accept their testimony as to the payment of the purchase price of the personal property, and Glenn took possession of the personal property at once, a regular procedure. The deed was prepared by an attorney, was properly executed, and promptly recorded. The mortgage was also drawn by an attorney and was properly executed, though not recorded. The newly created mortgage indebtedness was paid in full approximately one month after the mortgage was executed, and although it was unusual that the mortgage was left in the possession of Glenn, this does not alter the fact that it was executed and the indebtedness was paid. They admit that the abstract of title was not examined, but declare that the condition of the title was discussed with the attorney who was acquainted

with the facts. Further, that the grantees were not familiar with real-estate transactions, that they had not been advised that the abstract should be examined, and in fact, did not know what "examination of abstract" meant; that it was agreed that Oscar was to pay taxes assessed during the year 1949 and that therefore it was not necessary to prorate them. The balance due on the mortgage of the Equitable Life Assurance Society was disclosed by the mortgage itself and by the mortgagee's receipts; that from the testimony it is as reasonable to conclude that a mortgage note was executed and that it is now in the possession of Oscar.

Many of the facts above recited are without substantial dispute. The controversy arises upon conclusions drawn from facts proved, and plaintiffs contend that there is but one inescapable conclusion—that the brothers, Frank and Glenn, obtained the deed and bill of sale without a fair consideration.

It is not surprising that plaintiffs' counsel suspect that the truth has not been told by the defendants, particularly with respect to the loan of $6,000 which they claim to have received from their sister. Their testimony in that regard is replete with discrepancies. There are, as plaintiffs point out, other features of the transaction which are unusual. We have given the case the scrutiny which those circumstances call for. But it is not enough that we find justification for plaintiffs' suspicion. They had the burden to establish the alleged fraud by clear, satisfactory, and convincing evidence. *Massey v. Richmond,* 208 Wis. 239, 242 N. W. 507; *Miller v. Lange,* 234 Wis. 460, 290 N. W. 618; *Zimdars v. Zimdars,* 236 Wis. 484, 295 N. W. 675. The trial judge, who had before him more than the cold record, found that they had failed to meet the burden. We may not say that the evidence preponderates against his finding.

*By the Court.*—Judgment affirmed.