**In the Matter of LOYAL CHEESE COMPANY, INC., Debtor.**

**Lawrence J. KAISER, Trustee of Loyal Cheese Company, Inc., Plaintiff–Appellant,**

v.

**WOOD COUNTY NATIONAL BANK AND TRUST COMPANY, Defendant–Appellee.**

**No. 91–3085.**

United States Court of Appeals, Seventh Circuit.

Argued May 1, 1992.

Decided July 30, 1992.

Jeffrey W. Guettinger (argued), Herrick, Hart, Duchemin & Danielson, Peter Her-

rell, Wiley, Wahl, Colbert, Norseng, Cray & Harrell, Eau Claire, Wis., for plaintiff-appellant.

Jeffrey Huttenburg (argued), Richard D. Weymouth, Nash, Podvin, Tuchscherer, Huttenburg, Weymouth & Kryshak, Wisconsin Rapids, Wis., for defendant-appellee.

Before CUDAHY, POSNER and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

Lawrence J. Kaiser, the bankruptcy trustee (the Trustee) of the Loyal Cheese Company, Inc. (Loyal), brought this action against Wood County National Bank and Trust Company (the Bank) seeking to avoid certain transfers from Loyal to the Bank, as well as a loan Loyal made to Kickapoo Valley Cheese Corporation (KVCC), a related company. The Trustee alleged that these transactions constituted fraudulent conveyances under either the Bankruptcy Code[1] or the Wisconsin Fraudulent Conveyance Act (Wisconsin Act).[2] After two days of testimony, the bankruptcy court dismissed the claims. The district court affirmed and the Trustee appeals. We affirm.

## I.

On April 25, 1986, Loyal and the Bank entered into an agreement (the Loan Agreement) under which Loyal restructured its existing debt with the Bank and received a new loan of $500,000. The new loan doubled Loyal's weekly payments to the Bank, to $4,500 per week. In addition, pursuant to the Loan Agreement, Loyal loaned $174,000 of the proceeds to KVCC. The KVCC loan was subordinated to Loyal's loan from the Bank. KVCC never made any payments on the loan.

In August of 1987, Loyal refinanced the April 25 loan. Loyal obtained an additional $100,000 and executed a new business note (the August Note) in the amount of $347,688.14 (the remaining principal on the April 25 loan plus the new funds). Loyal kept current on its note to the Bank until it closed down in December of 1988. On December 12, 1988, Loyal authorized the Bank to take the sum of $189,641.20 out of Loyal's regular operating account to reduce the outstanding balance on the August Note. On March 17, 1989, Loyal filed for bankruptcy protection.

The Trustee for Loyal sought to avoid the loan to KVCC, the $189,000 payment made to the Bank in December of 1988 and "all payments made by the debtor to the bank." Trustee's Memorandum at 5 (Dec. 7, 1990). The bankruptcy court found the last of these claims too vague to be ruled on and dismissed it for lack of specificity. As for the KVCC loan and the $189,000 payment, the court found that the Trustee had failed to meet his burden of proof under either the Bankruptcy Code or the Wisconsin Act. The district court affirmed.

In reviewing the decisions of the bankruptcy and district courts, "we must accept findings of fact unless they are clearly erroneous." *In re Longardner & Associates, Inc.*, 855 F.2d 455, 459 (7th Cir.1988). We review conclusions of law, however, de novo. *Id.*

## II. BANKRUPTCY CODE

The Trustee argues that all of the payments made by Loyal to the Bank pursuant to the Loan Agreement during the year immediately preceding Loyal's filing for bankruptcy are voidable under 11 U.S.C. § 548(a)(2). That provision states, in part:

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obli-

---

**1.** 11 U.S.C. §§ 101 *et seq.* (1988).

**2.** Wis.Stat. §§ 242.01 *et seq.* (1985–1986).

gation was incurred, or became insolvent as a result of such transfer or obligation; [or]

 (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital. . . .

The Trustee contends that the section 548 issue raised in this case is:

[W]hether when a security interest attaches outside the one-year period before filing bankruptcy, do § 548(a)(2) and (d)(1) [3] read together mean that the payments made in the year prior to filing constitute avoidable transfers ... when the other elements of § 548(a)(2) are also met.

Br. at 4. The Trustee argues that the answer to this question is yes. The Bank, on the other hand, contends that the answer to this question is no—that is, that the only "transfer" for purposes of section 548(a)(2) took place in April of 1986, when the Bank acquired a security interest in Loyal's property. That transfer, of course, is outside the one-year limitation of section 548(a)(2).

Both the bankruptcy court and the district court treated the one loan payment that they specifically addressed—the $189,000 payment made by Loyal in December of 1988—as a transfer for purposes of section 548. The bankruptcy court, however, denied the Trustee's claim that this transfer was voidable because the Trustee failed to show that the transfer met the other requirements of section 548(a). Specifically, the court found that the transfer was a payment on a fully secured debt that reduced Loyal's indebtedness to the Bank by the amount of the payment, and concluded that such a payment "clearly constitutes a 'reasonably equivalent value'" for purposes of section 548(a)(2)(A). Opinion of Bankruptcy Court at 17 (Dec. 13, 1990)

(hereinafter Bankr.Op.). The district court affirmed that finding, citing *In re B.Z. Corporation*, 34 B.R. 546 (Bankr.E.D.Pa. 1983). Memorandum and Order at 6 (Aug. 6, 1991). Neither the bankruptcy court nor the district court decided whether any other payments made by Loyal to the Bank constituted transfers for purposes of section 548(a). Rather, the bankruptcy court found, and the district court agreed, that those claims "lack sufficient specificity for the Court to rule on them." Bankr.Op. at 14.

We need not decide here whether the loan payments constitute section 548 transfers because, even if they do, the Trustee has not shown that they meet "the other elements of section 548(a)(2)." The Trustee does not challenge the bankruptcy court's finding, affirmed by the district court, that Loyal's December 1988 payment of $189,000 decreased Loyal's indebtedness to the Bank by a corresponding amount, nor does he allege that any other payments made by Loyal under the Loan Agreement failed to decrease the debt *pro tanto*. The Trustee also fails to cite any cases contradicting the conclusion of the bankruptcy and district courts that a debtor whose payments on a secured debt decrease the debt by the amount of the payments receives reasonably equivalent value for those payments, and offers no argument as to why we should find that conclusion to be erroneous.

█ Instead, the Trustee seems to argue that Loyal's payments under the Loan Agreement are avoidable because the Loan Agreement itself—or, more accurately, the grant to the Bank of a security interest in Loyal's business pursuant to the Loan Agreement—meets the requirements of section 548(a)(2). Thus, the Trustee argues that Loyal did not receive reasonably equivalent value for the obligations it undertook under the Loan Agreement (Br. at 5–7),

---

**3.** 11 U.S.C. § 548(d)(1) provides:

 For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

that Loyal was insolvent at the time of the Loan Agreement or was rendered insolvent by the obligations imposed upon it by the Agreement (Br. at 10, 13–15), and that entering into the Loan Agreement left Loyal with unreasonably small capital for its business (Br. at 15–16). But the Trustee cites no authority, and we are aware of none, suggesting that a court may avoid apparently nonfraudulent transfers that occurred within the year preceding bankruptcy based on the characteristics of the underlying loan transaction that was entered into more than one year prior to filing.[4] Indeed, such an approach strikes us as a back-door way to get around the strictures of the bankruptcy code's one-year limitation on avoidable transfers. The Trustee has not presented us with a theory that would support such an approach here.[5]

### III. WISCONSIN FRAUDULENT CONVEYANCE ACT

The Trustee also argues that the Loan Agreement and, in particular, the $174,000 loan from Loyal to KVCC made pursuant to that agreement, constituted fraudulent conveyances under the Wisconsin Act. The Wisconsin Act, of course, does not contain the one-year limitation of the Bankruptcy Code. The bankruptcy court found, and the parties do not appear to dispute, that the applicable statute of limitations under the Wisconsin Act is six years from the time of the accrual of the actions. Thus, the April 25, 1986, transaction between

Loyal and the Bank is within the applicable time limit under the Wisconsin Act. Nevertheless, the Trustee's claim fails.

Under the Wisconsin law in effect at the time of the transaction, a conveyance is fraudulent if it is made without fair consideration and the person making the conveyance (1) "is or will be thereby rendered insolvent"[6] or (2) "is engaged or is about to engage in a business or transaction for which the property in his hands after the conveyance is an unreasonably small capital."[7] The Wisconsin Act further provides that "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."[8] The burden of proving these elements is on the Trustee. *In re Atkinson,* 63 B.R. 266 (Bankr.W.D.Wis.1986).[9] The elements of a fraudulent conveyance must be established by clear and convincing evidence. *Kerbet v. Behling,* 265 Wis. 288, 61 N.W.2d 205, 207 (1953). The bankruptcy court found that the Trustee had failed to prove either (1) that Loyal was insolvent at the time of the April 25, 1986 transaction or became insolvent as a result of that transaction, or (2) that the transaction left Loyal with unreasonably small capital. We review each of these conclusions in turn.

### A. *Insolvency*

The Trustee argues that the bankruptcy court's finding as to insolvency,

---

4. Footnote 2 of *In re Bundles,* 856 F.2d 815 (7th Cir.1988), on which the Trustee relies, does not support his position. That footnote states, in essence, that where a mortgagee sells the property of the debtor in a foreclosure sale, it is the sale of the property, not the creation of the mortgagee's *security interest in it, that* constitutes a "transfer" for purposes of section 548(a)(2). But this principle is of no help to the Trustee. The *Bundles* court did not refer back to the circumstances surrounding the original mortgage transaction in order to determine whether the later foreclosure sale was avoidable under section 548(a)(2), as the Trustee would have us do here.

5. It is unclear whether Loyal appeals the bankruptcy court's denial, affirmed by the district court, of Loyal's claim that the $174,000 loan from Loyal to KVCC is not avoidable under

section 548(a). For the sake of completeness, we note here our agreement with this ruling.

6. Wis.Stat. § 242.04 (1985–1986).

7. Wis.Stat. § 242.05 (1985–1986).

8. Wis.Stat. § 242.02(1) (1985–1986).

9. The Trustee argues that, once the plaintiff proves inadequacy of consideration, the defendant has the burden of showing that the plaintiff was *not* insolvent. The Trustee relies on *In re Joshua Slocum, Ltd.,* 103 B.R. 610 (Bankr. E.D.Pa.1989), a case from the Eastern District of Pennsylvania interpreting the Pennsylvania Uniform Fraudulent Conveyance Act. We are not persuaded that we should follow this authority rather than *Atkinson,* a recent case from a district court within the relevant jurisdiction.

which was affirmed by the district court, is erroneous because the court used a "capitalization of earnings" test rather than the "balance sheet" test contained in the Wisconsin statute. This argument is without merit. The bankruptcy court stated that there was conflicting evidence with respect both to Loyal's solvency when it entered into the Loan Agreement and to the effect of that agreement on its solvency. The court then quoted the Wisconsin statute's definition of insolvency, observing that it "has to do with present fair salable value." Bankr.Op. at 21. The court found, however, that the Trustee had failed to show the present fair salable value of Loyal's assets "in a clear and convincing manner." *Id.* Rather, the court noted that the Trustee had relied solely on the Bank's estimated liquidation value of Loyal's assets, which the court concluded "was not clear [evidence] of the insolvency of the debtor on 4/25/86." *Id.* The bankruptcy court thus applied the correct test under Wisconsin law, and its conclusion was not clearly erroneous.

B. *Unreasonably Small Capital*

■ The Trustee also argues that the bankruptcy court erred in finding that the Loan Agreement did not leave Loyal with unreasonably small capital. We are not persuaded. The bankruptcy court found that the evidence on this issue was conflicting but that Loyal had been doing fine with a small capitalization for years and in fact was netting $30,000 per month at the time the parties entered into the Loan Agreement. In addition, the court found that Loyal's eventual demise was due not to the increased loan payments under the April 25, 1986, agreement but to cutbacks in government cheese programs, which had been a mainstay of Loyal's business. We agree with the district court that these findings of fact are not clearly erroneous.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.